*800 P.2d 683*

**BRYANT MOTORS, INC., a Washington corporation, Plaintiff–Appellant,**

v.

**AMERICAN STATES INSURANCE COMPANIES, a bonding company, Defendant–Respondent.**

**No. 18090.**

Court of Appeals of Idaho.

Nov. 8, 1990.

Keeton & Tait, Lewiston, for plaintiff-appellant. Paul C. Keeton argued.

Jones & Jones, Lewiston, for defendant-respondent. Garry W. Jones argued.

WALTERS, Chief Judge.

This dispute centers around a joint venture contract to assemble and deliver a school bus. We are asked to determine whether the trial court erred in granting American States' motion for judgment notwithstanding the verdict and alternative motion for new trial. For the reasons explained below, we affirm.

The relevant facts are as follows. Bryant Motors, Inc. (Bryant), and North American Diesel, Inc., (Noram), together entered into a bid to deliver a school bus to the school district of St. Maries, Idaho. The parties' bid provided that Bryant would supply a bus body in accordance with the school district's specifications, and Noram would deliver a chassis. The school district accepted the joint bid and awarded the contract to Bryant and Noram. Bryant secured a bus body, and Noram likewise built a bus chassis. The two portions were shipped to a factory in Iowa where they were assembled to make one unit. The completed school bus was then delivered to the school district.

Prior to this undertaking, Noram and Bryant had combined their bids to assemble and deliver school buses on eight to ten separate occasions. In each case, Noram received a check from the purchasing school district for the full amount of the completed bus, and then forwarded to Bryant its portion of the payment. However, at the time of the present transaction, Noram was experiencing cash-flow problems and was operating on a line of credit with its bank which required that all money received by Noram be deposited in a special checking account. These funds were applied to reduce Noram's debt with the bank. In order to issue any checks, Noram had to apply to the bank for additional money on its line of credit. Those funds then would be deposited to Noram's operating account, which was the only account upon which Noram could make withdrawals. Thus, when Noram received the lump sum payment of $38,676 from the St. Maries school district on August 3, 1987, Noram deposited the entire amount into the special account, failing to forward to Bryant its portion, $14,770. Noram did not inform Bryant that it had received the check, and when Bryant eventually made inquiries on the 9th and 15th of September, 1987, Noram denied having been paid.

On October 2, 1987, Bryant contacted the St. Maries school district directly. Upon discovering that the check had in fact been sent to Noram, Bryant brought an action to recover its portion of the payment from Noram. When Noram subsequently filed for bankruptcy, Bryant abandoned its claim against Noram and filed an "amended" complaint seeking recovery from American States Insurance Company, which had provided Noram's dealer's bond—required under I.C. § 49–1608 in order for Noram to sell vehicles in Idaho. The terms of the bond obligated American States to indemni-

fy any person injured by any fraudulent representations made by Noram.

At the conclusion of the trial, the jury returned a verdict in favor of Bryant. American States moved for judgment notwithstanding the verdict, asserting that Bryant had failed to prove fraud, and, in the alternative, moved for a new trial. The trial court granted both of American States' motions. Bryant appeals from those decisions.

On review, we conclude the trial court was correct in granting American States' motion for judgment n.o.v. Because we find that issue dispositive, we need not address the court's ruling on the alternative motion for a new trial.

I.

■ A motion for judgment n.o.v. under I.R.C.P. 50(b) admits the truth of all adverse evidence. Every reasonable inference is drawn in the light most favorable to the non-moving party. The question is not whether the record is literally devoid of evidence supporting the non-moving party, but whether there is substantial evidence upon which the jury could properly find a verdict for that party. *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974). Hence, the trial court is not free to weigh the evidence or pass on the credibility of witnesses, making its own independent findings of fact and comparing them with the jury's findings, as would be the case in deciding a motion for new trial. *Quick v. Crane*, 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986). Rather, the requisite standard is whether the evidence is of sufficient quantity and probative value that reasonable minds could reach the same conclusion as did the jury. *Mann v. Safeway, Stores, Inc., supra.*

In determining whether a judgment n.o.v. was properly granted, the appellate court applies the same standard as does the trial court which passed on the motion originally. *Quick v. Crane, supra.* Thus, we will review the record of the trial below and will draw all reasonable inferences from the evidence in a light most favorable to Bryant.

II.

Prefatorily, we note that American States' obligation under the bond is limited to Noram's fraudulent practices and representations; the bond does not render American States liable for Noram's breach of contract, conversion, or other acts or omissions. We will address first the subsidiary question of whether American States' obligation under the bond, issued pursuant to I.C. § 49–1608, extends to members of the class to which Bryant belongs. Next, we will examine whether Bryant established the necessary elements of fraud entitling it to recovery.

A. The Bond

■ The dealer's bond issued to Noram by American States provides that "[t]he conditions of this bond are the Surety shall indemnify ... any person, firm or corporation against [Noram's] practice of fraud or fraudulent representations...."

■ The obligation of a surety on a bond required by statute is determined by the provisions of the statute. *Royal Indemnity Co. of New York v. Business Factors, Inc.*, 96 Ariz. 165, 393 P.2d 261 (1964). Thus, such bonds are construed in the light of the statute creating the obligation secured and of the purposes for which the bond is required, as expressed in the statute. See 74 AM.JUR.2D *Suretyship* § 28, at 30–31 (1974); *Stevens v. Farmers Elevator Mut. Ins. Co.*, 197 Kan. 74, 415 P.2d 236 (1966); *Kohles v. St. Paul Fire & Marine Ins. Co.*, 144 Mont. 395, 396 P.2d 724 (1964). It is presumed that the intention of the parties was to execute a bond such as the law required. 12 AM.JUR.2D *Bonds* § 26, at 495–96 (1964).

The Idaho Code provides, as a prerequisite to the issuance by the state transportation department of a dealer's license to sell new or used vehicles, that the applicant must procure a bond to cover any fraud committed by it in its business dealings. I.C. §§ 49–1601, 49–1608. Idaho Code § 49–1608 states that:

Before any dealer's license shall be issued by the department to any applicant, the applicant shall procure and file with the department good and sufficient bond in the amount shown ... and conditioned that the applicant shall not practice any fraud, make any fraudulent representation or violate any of the provisions of this chapter ... in the conduct of the business for which he is licensed.[1]

Idaho Code § 49–1610(1) provides that "[i]f any person shall suffer any loss by reason of any fraud practiced on him or fraudulent representation made to him by a licensed dealer ... that person shall have a right of action against the dealer...."

American States contends that the legislative intent in promulgating these sections was to protect the general consuming public, and that the statutory scheme set forth in chapter 16 of title 49 was not intended to protect non-consumers. We note, however, that the statute draws no such distinction between the consuming public and business merchants; the legislature did not limit the scope of the statute to buyers or consumers, nor did it exclude creditors, joint venturers, or other non-consumer classes. Rather, the statutory intent is expressed in broad language, mandating a bond condition that the dealer shall not practice *any* fraud or make *any* fraudulent representations in the conduct of its business as a dealer. Moreover, in enacting I.C. § 49–1610(1), the legislature provided a remedy to *any person* suffering *any loss* as a result of *any fraudulent representation* made by dealer. American States further maintains that merchants have better means available for protection against nonpayment than does an individual member of the general public. Such argument, however, is misplaced. The bond required by statute is not a bond against insolvency, but a bond conditioned against fraud. A merchant is in no better position to protect against the deception of a dealer than is the general public.

Thus, in determining the obligation of American States, we conclude that the purpose of the statute under which the bond was given was to indemnify *any person* injured by the dealer's fraud in conducting his business of selling vehicles. Accordingly, we hold that American States' obligation to indemnify is not limited to the general public, but extends to anyone injured by a dealer's fraud, and would apply to Bryant if it is established Bryant was so injured.

### B. Fraud

The elements of actionable fraud or fraudulent representation are as follows: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Federal Land Bank of Spokane v. Parsons*, 116 Idaho 545, 549, 777 P.2d 1218, 1222 (Ct.App.1989); *Witt v. Jones*, 111 Idaho 165, 168, 722 P.2d 474, 477 (1986). The party alleging fraud has the burden of proving all of these elements by clear and convincing evidence. *Magic Valley Potato Shippers v. Continental Ins.*, 112 Idaho 1073, 739 P.2d 372 (1987). The absence of any one of these elements is fatal to recovery. *Smith v. King*, 100 Idaho 331, 334, 597 P.2d 217, 230 (1979).

The trial court held that Bryant had failed to demonstrate it suffered any loss or legal injury from its reliance on Noram's statement that the check from the school district had not arrived. The court concluded that Noram's failure to pay Bryant, alone, was not a misrepresentation of fact; rather, the false representation consisted only of Noram's attempt to conceal the fact that it had received and disposed of the payment from the school district. Thus, in order to show a loss suffered as a conse-

---

**1.** This section was redesignated in 1988, during the pendency of this action. The language of this section formerly was codified as I.C. § 49–2409. *See* 1988 Ida.Sess.Laws, ch. 265, § 381, p. 766.

**800**

quence of Noram's false statement, Bryant was required to demonstrate that it suffered harm beyond the fact of non-payment.

Bryant contends that, as a consequence of Noram's concealment of the facts, Bryant's assertion of its legal rights were delayed and its ability to take action to protect its interest was impaired. Bryant maintains that the fact that its rights were delayed is legally sufficient to establish the element of injury necessary to sustain its claim of fraud. We do not agree.

█ In order to secure relief on a basis of fraud, the party seeking redress must have been damaged, injured or harmed as a result of the asserted fraud. A false representation which causes no loss is not actionable. *Kloppenburg v. Mays,* 60 Idaho 19, 88 P.2d 513 (1939). Where injury is remote, contingent, and not necessarily a proximate result of the acts complained of, an action in fraud by a creditor against a person who fraudulently prevents him from collecting his claim may not be maintained. See 37 AM.JUR.2D *Fraud and Deceit* § 31, at 56 (1968).

Had Noram instantaneously informed Bryant of its conduct, Bryant may have taken action sooner. However, there is no indication as to what those endeavors would have been or what they would have yielded: Bryant may have been able to successfully prevail upon Noram to apply with the bank for an extension of credit, or Bryant may have filed suit sooner with the possibility of getting some of Noram's funds as they were received, or Bryant may have been able to secure a default judgment against Noram in advance of other unsecured creditors. However, there is no *evidentiary* basis in the record to show that Bryant would be in any better position had it known what had become of the check. The record must contain substantial evidence from which a jury could properly reach a verdict in favor of Bryant. Under the facts of this case, a finding of injury would be a matter of conjecture and thus purely speculative. Such evidence is not of a sufficient quantity and probative value to support the jury verdict. Accord-

ingly, the judgment notwithstanding the verdict is affirmed.

Costs to respondent, American States Insurance Company. No attorney fees allowed on appeal.

SWANSTROM, J., and WINMILL, J. Pro Tem., concur.