874 P.2d 555

**SEUBERT EXCAVATORS, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**EUCON CORPORATION, an Idaho corporation d/b/a Steelman–Duff and United States Fidelity & Guarantee Company, Defendants–Respondents,**

and

**EUCON CORPORATION, an Idaho corporation, Third–Party Plaintiff,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, Third–Party Defendant–Appellant.**

No. 19096.

Court of Appeals of Idaho.

March 3, 1993.

Petition for Review Granted May 12, 1993.

---

Appeal Decided, See 125 Idaho 409, 871 P.2d 826.

Clark & Feeney, Lewiston, for appellants. Paul T. Clark (argued).

Clements, Brown & McNichols, Lewiston, for respondents. Michael E. McNichols (argued).

WALTERS, Chief Judge.

This is an appeal from a judgment entered in favor of a subcontractor and against the general contractor on a road construction project. For the reasons explained below, we affirm the judgment in part, reverse in part, and remand the proceeding for entry of a modified judgment.

## I. *Facts and Procedural Background.*

In January 1983, the Washington State Department of Transportation ("the state") awarded Seubert Excavators, Inc. ("Seubert") the prime contract for the reconstruction of approximately seven miles of roadway in south-central Washington. The contract called for three distinct types of work to be performed: excavating and grading the existing roadway; placing crushed rock on the excavated roadway; and finally, paving the roadway. Seubert subcontracted the excavation and grading work to Eucon Corporation, d/b/a/Steelman–Duff ("Steelman–Duff"), retained the rock-crushing and rock-placing work for itself, and subcontracted the paving work to TransState Paving ("TransState").[1] The project required cooperation and coordination among the prime contractor, the subcontractors, and the state in several stages of construction. Before starting work the parties drew up a progress schedule projecting

---

1. TransState was not made a party to this action.

the time and sequence in which the various tasks were to be performed. The terms of the prime contract provided that all work was to be completed within 120 working days, between April 1, 1983, and September 21, 1983, and that liquidated damages and actual engineering costs would be assessed in the case of delay.

By June 22, Steelman–Duff had finished excavating all but a small section in the middle of the roadway, where Seubert was operating its rock-crushing equipment. Concluding that it could not complete this section with Seubert still on the site, Steelman–Duff temporarily moved its personnel and equipment, on June 23, to another project. Seubert remained in this section, crushing rock, until July 19. The section was then drilled and blasted on August 2 and 4, and Steelman–Duff returned to the site on August 8. Steelman–Duff completed all of its work by September 12, 1983, and TransState began the final paving on September 19. However, the project was not substantially completed until September 30, six working days beyond the contract deadline. Pursuant to the prime contract's liquidated damages clause, the state charged Seubert liquidated damages and additional engineering costs totalling $10,622.93. The state withheld this amount from its final payment to Seubert, who in turn withheld the same from Steelman–Duff.

Challenging the propriety of Seubert's withholding, Steelman–Duff filed a notice of claim with the state to collect the $10,622.93 and also to recover additional damages allegedly caused by Seubert's delay. Seubert, in response to Steelman–Duff's claims, filed a complaint in the district court of Nez Perce County, Idaho, asserting various claims against Steelman–Duff including a claim to recover its costs of stockpiling rock during Steelman–Duff's absence from the jobsite and a claim for the refund of $977.60 it allegedly overpaid to Steelman–Duff. Steelman–Duff filed an answer and a counterclaim against Seubert and Seubert's bonding company, Employers Insurance of Wausau ("Wausau"), to recover the damages set out in the notice of claim and for its attorney fees incurred in the action.

Following a trial before the court, the district judge issued an opinion rejecting all Seubert's claims with the exception of its claim to recover certain costs of road maintenance, totaling $1,032.00. The court also rejected Steelman–Duff's counterclaims against Seubert, except for the claim that Seubert had wrongfully withheld $10,622.93. The court originally issued findings and conclusions omitting any mention of Wausau. When Steelman–Duff later moved to recover attorney fees from Wausau under I.C. § 41–1839, which provides for attorney fees against a surety, Wausau protested on the grounds that none of the pleadings mentioned Wausau, that no proof had been introduced against Wausau, and that the court's memorandum decision did not provide for any judgment against Wausau. Over Seubert's objection, the district court granted Steelman–Duff's motion to reopen the evidence to admit the contract bond, which had been issued in favor of the state. The court then entered an order amending its findings and conclusions to reflect that Steelman–Duff was a third-party beneficiary of the bond contract, that Wausau was jointly liable with Seubert for the amount due Steelman–Duff under the contract bond, and that Steelman–Duff was entitled to recover a portion of its attorney fees from Wausau under I.C. § 41–1839.

The court entered judgment for Steelman–Duff in the amount of $9,590.93—the difference between the parties' offsetting awards—and allowing prejudgment interest on that amount from the time payment originally was due from Seubert. Seubert and Wausau joined in this appeal.

## II. Issues Presented and Standard of Review.

Seubert and Wausau raise the following issues:

(1) whether the district court erred in failing to find Steelman–Duff at least partly responsible for the delay and the liquidated damages and costs assessed by the state;

(2) whether the court erred in finding that Steelman–Duff was not liable for Seubert's

costs of stockpiling crushed rock during Steelman–Duff's absence from the jobsite; (3) whether the court erred in finding that Seubert had failed to prove its claim of overpayment to Steelman–Duff; (4) whether it was error for the court to award prejudgment interest on offsetting claims arising under the same contract, and whether the date from which such interest should run was sufficiently established; and (5) whether the court erred when it reopened the evidence to permit Steelman–Duff to establish its third-party beneficiary claims against Wausau.

Our review of the district court's factual findings is limited. We do not weigh the evidence, nor do we substitute our view of the facts for that of the trial judge. I.R.C.P. 52(a); *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 812 P.2d 253 (1991). We merely determine whether the findings are supported by substantial, even if conflicting, evidence in the record. If so supported, the findings cannot be deemed clearly erroneous. *Barber v. Honorof*, 116 Idaho 767, 780 P.2d 89 (1989). However, we exercise free review of the trial court's application of relevant legal principles to the facts found.

### III. *Steelman–Duff's Liability for the Delayed Completion of the Project.*

Seubert contests the district court's finding that it had wrongfully withheld the $10,622.93 from Steelman–Duff. According to Seubert, Steelman–Duff's 46–day absence from the job site, from June 23 to August 8, constituted a breach of the subcontract that caused or at least contributed to the delayed completion of the project, and that Seubert was entitled to withhold some or all of the damages and costs assessed by the state. Because we reject Seubert's assertion that Steelman–Duff breached the contract, we decline to consider Seubert's argument that the court erroneously attributed the cause of delay to other parties.

Preliminarily, we note that Seubert does not argue that Steelman–Duff failed to complete any of its work within the time specified by the contract. The record unequivocally demonstrates that Steelman–Duff had completed all its work by September 12, 1983, more than a week before the September 21, 1983, deadline specified in the prime contract. Moreover, the trial court found that all the parties willingly deviated from their original progress schedule and held that the schedule was not a binding part of the contract. Rather, Seubert contends that Steelman–Duff's 46–day absence constituted a breach of other contractual provisions that allegedly required Steelman–Duff to perform its work continuously and without interruption. Specifically, Seubert argues that Steelman–Duff's absence violated the provision requiring Steelman–Duff to "continue diligently," and that the district court's contrary finding of diligence was clearly erroneous.

The record in this case shows that on June 23, the day Steelman–Duff decided to move its personnel and machinery from the jobsite, Seubert was crushing rock in the section that Steelman–Duff was to excavate. Seubert did not leave until July 19. Although Steelman–Duff had planned to return to the site in mid-August, it immediately accelerated its plans when told to do so by Seubert's letter of July 29. Steelman–Duff arranged for the site to be drilled and blasted on August 2 and 4, to loosen the rock for removal. The following Monday, August 8, Steelman–Duff returned to the site and began excavating the final section. It completed all of its work on the project by September 12, 1983. These facts, which are supported by substantial evidence, are sufficient to support the district court's finding that Steelman–Duff performed diligently. Accordingly, that finding will not be disturbed.

Seubert further asserts that, notwithstanding the finding that Steelman–Duff diligently performed its duties, the court should have found that Steelman–Duff's absence from the jobsite breached the contract provisions requiring that it provide adequate labor and machinery to meet the progress schedule; that it not suspend work; and that it not voluntarily shut down or slow down operations. Contrary to Seubert's contentions, however, the fact that Steelman–Duff was absent from the jobsite does not, by itself, amount to a wrongful suspension of work or

a voluntary shutdown or slowdown of operations. The very nature of the project called for the work be done in stages, and none of the parties were required to remain on the site during the entire period of the contract. Seubert itself was absent from the jobsite for forty-eight consecutive days between July 19 and September 6. TransState was to begin its paving after the entire roadway was completely prepared. Here, the district court considered all the evidence and found that Steelman–Duff had performed its contractual duties diligently. Although the court did not specifically address whether Steelman–Duff had wrongfully suspended work or voluntarily shut down or slowed the operations, the finding of diligence precludes a finding that these alleged breaches occurred. Because the record is clear, we may disregard the absence of more specific findings. *See Pope v. Intermountain Gas Co.,* 103 Idaho 217, 646 P.2d 988 (1982). Therefore, we uphold the district court's award of $10,622.93 to Steelman–Duff.

### IV. *Steelman–Duff's Liability for Seubert's Stockpiling Costs.*

■ Seubert avers that the district court erred in failing to find Steelman–Duff liable for the extra $5,000 Seubert incurred stockpiling crushed rock during Steelman–Duff's 46–day absence. As explained above, Steelman–Duff's absence did not constitute a breach of its contractual duties, and therefore it cannot be held liable for Seubert's consequential damages.

### V. *Seubert's Claim for an Overpayment.*

■ Seubert also challenges the district court's finding that it failed to prove its claim to recover an alleged overpayment made to Steelman–Duff. A finding that a party has failed to meet its burden of proof is reviewed in light of the "clearly erroneous" standard under I.R.C.P. 52(a). *Viehweg v. Thompson,* 103 Idaho 265, 647 P.2d 311 (Ct.App.1982).

At trial, Seubert's office manager, Tom Reiner, testified that he had calculated an overpayment of $977.60 to Steelman–Duff. In connection with this testimony, the court admitted a worksheet, Exhibit 153, showing estimated amounts Seubert owed to Steel-man–Duff, and which Seubert had in fact paid. Stapled to this worksheet was a small piece of paper showing a printed figure of "977.60" and bearing Mr. Reiner's hand-written statement that "Steelman–Duff was overpaid this amount per final payment figures." In its findings and conclusions, the district court stated that it could not discern from Exhibit 153, or from other facts in the record, how Mr. Reiner had arrived at the figure, and accordingly, refused to accept the testimony that the overpayment had occurred. As a result, the court found that Seubert had not proved its claim.

■ Seubert urges us to reverse this finding based on the rule that uncontradicted testimony from a witness, even an interested witness, may not be disregarded by the trier of fact unless the testimony is inherently improbable or unless the witness is shown not to be credible. *See Smith v. Idaho State University Federal Credit Union,* 114 Idaho 680, 760 P.2d 19 (1988); *Campbell v. Campbell,* 120 Idaho 394, 399, 816 P.2d 350 (Ct. App.1991); *Intermountain Health Care, Inc. v. Board of County Comm'rs,* 107 Idaho 248, 688 P.2d 260 (Ct.App.1984), *affirmed* 109 Idaho 299, 707 P.2d 410 (1985). Seubert's argument is well taken.

■ As the district court indicated, the record does not contain a proper evidentiary foundation for Mr. Reiner's calculations. However, no objection to foundation was raised at trial. Mr. Reiner testified that he personally had calculated, from company records, a $977.60 overpayment to Steelman–Duff. This testimony was the only testimony on the subject and was never rebutted or impeached by Steelman–Duff. Under the rule stated above, the district court's decision to disregard Mr. Reiner's testimony was clearly erroneous, and we therefore reverse its finding. Accordingly, Seubert is entitled to recover the $977.60 overpayment.

### VI. *Prejudgment Interest.*

We next address whether the district court erred in awarding prejudgment interest to Steelman–Duff. Seubert challenges the award, arguing that the amount of the claim was not a liquidated or ascertainable sum,

that prejudgment interest is not allowed on offsetting claims arising out of the same contract, and that the date of accrual was not sufficiently established at trial.

■■■ An award of prejudgment interest is proper to fully compensate the prevailing party for the loss of use of money representing its fixed or ascertainable damages. I.C. § 28–22–104; *Meldco, Inc. v. Hollytex Carpet Mills,* 118 Idaho 265, 270, 796 P.2d 142, 147 (Ct.App.1990); C. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES, ch. 7, § 50, at 205 (1935). Where the amount claimed is liquidated or capable of ascertainment by mere mathematical process, interest is allowed from the time the amount became due. I.C. § 28–22–104(2); McCORMICK, *supra,* at 216. Here, Seubert contends that because both parties prevailed on offsetting claims, the amount due Steelman–Duff was not liquidated until fixed by the district court. We disagree. Generally, a dispute over a claim, in whole or in part, does not change the character of a liquidated claim to an unliquidated claim. *Ace Realty, Inc. v. Anderson,* 106 Idaho 742, 682 P.2d 1289 (Ct.App.1984). Nor is a liquidated claim rendered unliquidated by the existence of a counterclaim, whether liquidated or unliquidated. *See Trimble v. American Sav. Life Ins.,* 152 Ariz. 548, 733 P.2d 1131 (App. 1986); *Hanzel v. Covell,* 218 Cal. 622, 24 P.2d 772 (1933); *Recreational Devel. Co. of America v. American Constr. Co.,* 749 P.2d 1002 (Colo.App.1987); *J. Walters Constr. Co. v. Greystone South Partnership,* 15 Kan.App.2d 689, 817 P.2d 201 (1991); *Winetrout v. Rackleff,* 86 Or.App. 62, 738 P.2d 220 (1987); *Hansen v. Rothaus,* 107 Wash.2d 468, 730 P.2d 662 (1986); *Jet Boats, Inc. v. Puget*

*Sound Nat. Bank,* 44 Wash.App. 32, 721 P.2d 18 (1986); McCORMICK, *supra,* at 213–16; AM.JUR.2D *Damages* § 660, at 722 (1988). In this case Steelman–Duff's claim for the withheld payment of $10,622.93 clearly was for a fixed, liquidated,[2] amount. The fact that it was subject to reduction, and was in fact reduced, does not change its liquidated character.[3]

■■■ Seubert further maintains that the award of prejudgment interest was contrary to I.C. § 28–22–104(5), which expressly allows interest on "money due on the settlement of mutual accounts from the date the balance is ascertained." Seubert argues that the existence of competing, potentially offsetting claims between the parties gave rise to "mutual accounts," within the meaning of the statute, and that because the balance was not actually ascertained until determined by the court, prejudgment interest should not have been allowed. Our analysis of this argument begins and ends with Seubert's erroneous premise that the parties' claims created mutual accounts. Although the term "mutual account" is not defined by statute, its meaning can be derived from various other authorities.

> [A] mutual account is one based on a course of dealing wherein each party has given credit to the other on the faith of indebtedness to him, and in reliance on the understanding that on settlement the accounts will be allowed, so that one will reduce the balance due on the other.

1A C.J.S. *Accounting* § 22, at 20 (1985); *accord Sergest v. Brown,* 263 Ala. 342, 82 So.2d 432 (1955); *Cox v. Stowers,* 204 Ga. 595, 50 S.E.2d 339 (1948). A mutual account con-

---

2. A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. Examples are claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate.
   C. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 54, at 213 (1935); *accord Trimble v. American Sav. Life Ins. Co.,* 152 Ariz. 548, 733 P.2d 1131 (App.1986); *Jet Boats, Inc. v.*

*Puget Sound Nat. Bank,* 44 Wash.App. 32, 721 P.2d 18, 23 (1986).

3. This conclusion may appear not entirely consistent with our recent decision in *Ervin Constr. Co. v. Van Orden,* 125 Idaho 738, 874 P.2d 549 (Ct.App.1992) (review granted December 30, 1992), addressing the allowance of prejudgment interest with respect to conflicting claims arising from a construction contract. On review of that case, the Supreme Court may further refine the law in Idaho regarding recovery of prejudgment interest. Our decision today, however, is consis-

sists of reciprocal dealings so that each party extends credit to the other, with a view toward ultimate settlement by payment of the balance.[4] *Cox v. Stowers, supra; Van de Wiele v. Koch,* 256 Or. 349, 472 P.2d 803 (1970); *Whitley's Elec. Service, Inc. v. Sherrod,* 293 N.C. 498, 238 S.E.2d 607 (1977); *Greer v. Limestone Co. v. Nestor,* 175 W.Va. 289, 332 S.E.2d 589 (1985); *Estate of Vicen v. Tamer,* 1 Wis.2d 193, 83 N.W.2d 664 (1957). Moreover, there must be a mutual agreement, express or implied, that the claims on each side be set off against the other. *E.P. Hinkle & Co. v. Washington Carpet Corp.,* 212 A.2d 328 (D.C.App.1965); 1 AM.JUR.2D *Accounts and Accounting* §§ 5–7, at 374–380 (1962).

The parties' transactions in this case cannot be construed as creating "mutual accounts" under any of these definitions.[5] The claims do not arise from reciprocal charges or allowances between the parties, nor did the parties agree, explicitly or implicitly, to extend each other credit. To the contrary, Steelman–Duff's claim arose from Seubert's breach of its obligation to pay Stellman–Duff on the date specified by the contract. For these reasons, I.C. § 28–22–104(1)(5) does not apply. Instead, prejudgment interest was properly awarded under subsection (2) of the statute, which provides for interest on money "after the same becomes due."

Seubert next takes issue with the trial court's decision to award interest from August 27, 1984, contending that the evidence was insufficient to establish when the $10,622.93 wrongfully withheld actually became "due." We disagree. The record contains a letter from Seubert to Steelman–Duff, dated August 27, 1984, which reads, in part:

Attached is our check in the amount of $58,309.97 for payment on the above referenced project. Below is a breakdown of how this amount was arrived at.

| | | |
|---|---|---|
| a) Due on Estimate No. 11 | = | $20,727.33 |
| b) Retained percentage due | = | 39,175.80 |
| c) Fuel Cost Adj.—Credit | = | 5,159.77 |
| d) LESS—Liquidated Damages | = | –19,752.93 |
| e) ADD—C.O. # 12 | | |
|    1) Liquidated Damages—Refund | = | 9,130.00 |
|    2) Detour Road Excavation | = | 3,870.00 |
| | | |
| TOTAL DUE | = | $58,309.97 |

*This leaves $10,622.93 that we have withheld for liquidated damages.*

(Emphasis added). From this evidence the district court reasonably could infer that payment was due on—and the $10,622.93 wrongfully withheld from—August 27, 1984, the date Seubert sent its check. Accordingly, we find no error.

### VII. *Steelman–Duff's Third–Party Claims Against Wausau.*

We turn next to Wausau's assertions that it was not obligated to Steelman–Duff under the contract bond, and that the district court erred in granting judgment and attorney fees against it. Specifically, Wausau contends (a)

---

tent with the rule applied in most other jurisdictions addressing the issue.

4. An open mutual account is an account with a balance which has not been ascertained. The account is kept open with the anticipation of future transactions. *Kugler v. Northwest Aviation, Inc.,* 108 Idaho 884, 702 P.2d 922 (Ct.App. 1985). Interest may run on the balance if the parties agree to interest. However, when the parties agree, in writing, to the balance owed by one party, the agreed-to balance becomes a "stated account," which replaces the original account

and is, in essence, a new contract. *Id.,* 108 Idaho at 887, 702 P.2d at 925. Unless the parties otherwise agree, interest is allowed at the statutory rate on the stated account from the time its balance is ascertained. I.C. § 28–22–104(1)(5).

5. Usually, mutual accounts are found to arise between merchants who trade with each other, although employment relationships and sharecrop ventures also may give rise to mutual accounts. *Jenkins v. Donaldson,* 91 Idaho 711, 429 P.2d 841 (1967); *McCarthy v. Paris,* 46 Idaho 165, 267 P. 232 (1928).

that the court erred in granting Steelman–Duff's motion to reopen the evidence to admit the contract bond, and (b) that the court erred in concluding that Steelman–Duff was an intended third-party beneficiary of that contract bond. We address these issues in turn.

### (a) Did the district court err in reopening the case?

▮ The decision whether to reopen a case and receive additional evidence before final judgment involves the exercise of discretion and will not be disturbed absent a showing that such discretion was abused. *Davison's Air Service, Inc. v. Montierth,* 119 Idaho 967, 812 P.2d 274 (1991). When an exercise of discretion is reviewed on appeal, the appellate court conducts a multi-tiered inquiry. The sequence of the inquiry is (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 803 P.2d 993 (1991).

Wausau first argues that the court's decision to reopen was inconsistent with applicable legal standards because Steelman–Duff did not plead a third-party beneficiary claim against Wausau, and second, that the decision to reopen—which in this case was nearly three years after trial, albeit before judgment was entered—was unreasonable and unfair. Contrary to Wausau's first assertion, the record demonstrates that Steelman–Duff named Wausau as an additional party to its counterclaims against Seubert. Moreover, Steelman–Duff's complaint specifically identified the bond contract between Seubert and Wausau; it alleged that the bond guaranteed Seubert's payment of all subcontractors, in-

cluding Steelman–Duff; and it alleged that Wausau was jointly liable with Seubert for payment to Steelman–Duff "by virtue of the contract bond." These allegations adequately apprised Wausau of Steelman–Duff's claim against it and the grounds upon which the claim rested, and accordingly were sufficient to state a third-party beneficiary claim against Wausau. I.C.R.P. 8(a)(1); *Farrell v. Brown,* 111 Idaho 1027, 729 P.2d 1090 (Ct. App.1986). Accordingly, the trial court did not abuse its discretion by considering Steelman–Duff's third-party beneficiary claim.[6]

[15] Nonetheless, Steelman–Duff failed to have the bond contract admitted at trial as proof of its third-party claims. It was not until Steelman–Duff requested attorney fees under I.C. § 41–1839—which provides for attorney fees against sureties—that the omission was brought to its attention. We have held that a trial court may properly grant a motion to reopen where the requesting party has shown some reasonable excuse, such as oversight, inability to produce the evidence, or ignorance of the evidence. *Allen v. Burggraf Constr. Co.,* 106 Idaho 451, 680 P.2d 873 (Ct.App.1984). Here, Steelman–Duff's attorneys submitted an affidavit explaining that at trial they understood and believed the bond had been offered and admitted into evidence, either as an exhibit or as part of another exhibit; that they did not discover their mistake until Wausau's objection to the attorney fees request; and that but for their mistaken understanding the bond would have been offered and admitted at trial. After considering the circumstances presented, the trial judge determined that no legal prejudice would result to Wausau and reopened the case to admit the bond. Although a situation in which the trial court does not issue findings or conclusions until years after trial may be, and we hope is, highly unusual, Wausau has not demonstrated that the court's decision to reopen the case, prior to final judg-

---

**6.** We note, however, that the fact an issue is not pled is not necessarily fatal to its being proved at trial, even over the objection of the opposing party. Idaho Rule of Civil Procedure 15(b) provides, in part:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the plead-

ings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

ment, was unreasonable or unfair. Accordingly, we find no abuse of discretion, and we will not disturb the court's decision.

(b) Did the district court err in concluding that Steelman–Duff was a third-party beneficiary of the contract bond?

■ Finally, we consider whether the court properly concluded that Steelman–Duff was an intended third-party beneficiary of the contract bond Seubert and Wausau executed in favor of the state of Washington.[7] The bond in this case was both a performance and a payment bond, and was expressly conditioned that Seubert "shall pay all laborers, mechanics, subcontractors, and materialmen." Steelman–Duff argues that the language expressly obligating Wausau to pay all Seubert's subcontractors plainly indicates an intent to benefit those subcontractors, including Steelman–Duff. Wausau, on the other hand, maintains that the only intended beneficiary of the bond is the state of Washington, and that the purpose of the bond is to protect the state from potential claims arising from Seubert's failure to pay its laborers and subcontractors. Had the parties intended to create contract rights in the subcontractors, Wausau continues, they could have included such a provision.

■ Under Idaho law, if a party can demonstrate that a contract was made expressly for its benefit, it may enforce that contract, prior to recision, as a third-party beneficiary. I.C. § 29–102; *Baldwin v. Leach*, 115 Idaho 713, 769 P.2d 590 (Ct.App. 1989). The test for determining a party's status as a third-party beneficiary, capable of properly invoking the protection of I.C. § 29–102, is whether the agreement reflects an intent to benefit the third party. *Stewart v. Arrington Constr. Co.*, 92 Idaho 526, 446 P.2d 895 (1968). The party must show that the contract was made for its *direct* benefit, and that it is not merely an indirect beneficiary. *Adkison Corp. v. American Bldg., Co.*, 107 Idaho 406, 409, 690 P.2d 341, 344 (1984).

■ The bond in this case was issued pursuant to Washington's public contracts bond statute, which requires that the general contractor furnish a bond to the state of Washington conditioned on the payment of all laborers, mechanics, and subcontractors and materialmen, and which expressly provides that these latter-mentioned persons "shall have a right of action in his, her, or their own name or names on such bond for work done. . . ." R.C.W. 39.08.010, 39.08.-030.[8] A bond required by statute is construed in light of the statute creating the obligation. *Bryant Motors v. American States Ins.*, 118 Idaho 796, 798, 800 P.2d 683, 685 (Ct.App.1990). It is presumed that the parties intended to execute a bond in compliance with the law. *Id.*, 118 Idaho at 798, 800 P.2d at 685. We conclude that the statute under which the bond was given was intended to protect laborers, materialmen, and subcontractors, including Steelman–Duff. Accordingly, Steelman–Duff was an intended beneficiary of Wausau's obligation under the bond. We hold, therefore, that the district court did not err in granting judgment against Wausau nor in awarding attorney fees against it.

## CONCLUSION

We reverse the district court's finding that Seubert did not prove its claim of overpay-

---

7. Washington's public contracts bond statute expressly provides to laborers and subcontractors a direct right of action under a payment bond executed pursuant to a public works contract. *See* R.C.W. 39.08.010. However, Washington law was not pled in this case, and the case was tried under Idaho law. Although Idaho Public Contracts Bond Act, I.C. § 54–1925 through 54–1930, similarly provides a right of action to subcontractors to sue on a payment bond, that statute does not apply to an out-of-state payment bond on an out-of-state project, such as is presented in this case. *See Beco Corp. v. Roberts & Sons Constr. Co.*, 114 Idaho 704, 760 P.2d 1120

(1988). It was for these reasons that Steelman–Duff was left to establish its common-law third party beneficiary rights, which are codified in I.C. § 29–102.

8. The statute limits this right of action to claims presented to and filed with the state's contracting body—in this case, the Washington State Department of Transportation—within thirty days after the contract is completed. The record establishes that Steelman–Duff complied with this procedure, thereby preserving its rights under the statute.

ment and affirm the remainder of the court's findings and conclusions. Accordingly, we remand the case for entry of a modified judgment consistent with these rulings. Although our decision gives Seubert some relief, we nevertheless conclude that Steelman–Duff is the dominantly prevailing party on appeal. *Meldco, Inc. v. Hollytex Carpet Mills,* 118 Idaho 265, 796 P.2d 142 (Ct.App. 1990). As a result, Steelman–Duff is entitled to an award of its costs and attorney fees under I.C. § 41–1839, *see Halliday v. Farmers Ins. Exchange,* 89 Idaho 293, 404 P.2d 634 (1965), in an amount to be determined in accordance with I.A.R. 40 and 41.

SWANSTROM, J., and SILAK, Acting Judge, concur.