979 P.2d 627

GREAT PLAINS EQUIPMENT, INC., a foreign corporation; Michetti Pipe Stringing; Beard Oil Petroleum, Inc., a Foreign Corporation; Atlas Copco Rental, Inc., a foreign corporation; CRC–evans Pipeline International, Inc., a foreign corporation; Courtesy Ford Lincoln Mercury, Inc., an Idaho corporation; Cowboy Oil Co., an Idaho Corporation; Darby Enterprises, Inc., a foreign corporation; Hartford Insurance Company/Pickard Tate & Allen, a Connecticut Company; Rasmussen Equipment Company, a Utah corporation; Rocky Mountain Machinery Company, a foreign corporation;V–1 Oil Company, an Idaho corporation; Valley Office Systems, Inc., an Idaho corporation; Cate–Idaho Equipment Co., Inc., an Idaho corporation B.D. Holt & Company, Inc., d/b/a Holt Company of Texas, a foreign corporation, Plaintiffs–Respondents–Cross Appellants,

v.

NORTHWEST PIPELINE CORPORATION, a foreign corporation, Defendant–Appellant–Cross Respondent

Kirkpatrick & O'Donnell Construction Equipment Co., Plaintiff–Appellant.

v.

Northwest Pipeline Corporation, a foreign corporation, Defendant–Respondent.

Nos. 22762, 22973.

Supreme Court of Idaho, Boise, March 1998 Term.

March 29, 1999.

Rehearing Denied May 20, 1999.

Hawley, Troxell, Ennis & Hawley, Boise and Pocatello, for appellant (case no. 22762) and respondent (case no. 22973), Northwest Pipeline Corporation. Ronald E. Bush and Thomas B. Chandler argued.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for respondents in case no. 22762, Hartford Insurance/Pickard, Tate & Allen

Company, Great Plains Equipment, Valley Office Systems, V–1 Oil Company, Cowboy Oil Company, Courtesy Ford, Darby Enterprises, Rasmussen Equipment, Atlas Copco, CRC Evans Pipeline International, Beard Oil, Rocky Mountain Machinery Company and Michetti Pipe Stringing, and appellant Kirkpatrick & O'Donnell in case no. 22973. Louis F. Racine, Jr., and John R. Goodell argued.

Craig W. Christensen, Ctd., Pocatello, argued for respondent B.D. Holt & Co., Inc.

Lowell N. Hawkes, Pocatello, argued for respondent Cate–Idaho Equipment Co. Inc.

WALTERS, Justice

## NATURE OF THE CASE

This is an appeal from a judgment in favor of several claimants involved in the construction of a natural gas transmission pipeline. The construction contract was entered into by Northwest Pipeline Corporation (NWP) and Great Plains Pipeline Construction, Inc. (GPPC), and required GPPC to build a new pipeline, compressor pumping stations and related facilities between Pocatello and Burley, Idaho. Delays in the completion of the contract forced GPPC to quit the job, leaving numerous subcontractors, equipment lessors, insurance providers, and other vendors unpaid. GPPC eventually was forced into involuntary bankruptcy, and the subcontractors filed liens against NWP for the unpaid amounts. All but seventeen of these subcontractors settled with NWP before trial. Following trial in the district court, sixteen of the remaining seventeen subcontractors were awarded judgment against NWP on all or a substantial portion of their claims on alternative legal theories based on Idaho's mechanic's lien statute, Utah's bond statute and alleged unjust enrichment. The final judgment and decree against NWP in favor of the successful claimants collectively exceeded $3 million.

NWP timely appealed from the judgment, and the subcontractors cross-appealed for the purpose of challenging the trial court's decision not to allow recovery of any punitive damages. In addition, the remaining subcontractor-claimant, Kirkpatrick & O'Donnell

Construction Equipment Co. (K & O), separately appealed from the district court's order granting summary judgment to NWP against K & O. The appeals were consolidated for disposition. For the following reasons, we affirm in part, and vacate in part.

## I.

## FACTUAL BACKGROUND

NWP, a regulated utility company, distributes natural gas to customers from New Mexico to the pacific northwest and Canada. In 1992, after review of its customers' needs, NWP applied to the Federal Energy Regulatory Commission (FERC), for a permit to expand its mainstream transmission line capacity. The entire expansion project consisted of 378 miles of new pipeline loops on NWP's existing mainline and lateral systems, together with ten new compressor stations, modifications at thirteen more compressor stations, and construction of or additions to thirty-five communication sites. The system expansion was divided into seven different "spreads." Spread 2 covered a span of seventy-six miles beginning south of Pocatello in Bannock County and running west across Power County to Burley in Cassia County, Idaho. Due to environmental concerns, the FERC approval required construction on Spread 2 to occur during the off-irrigation season.

After NWP invited bids to construct Spread 2, GPPC of Lubbock, Texas, submitted the lowest bid. Although NWP initially was concerned because GPPC's bid was significantly lower than any of the other bids, NWP's concerns were resolved on further investigation when NWP concluded that GPPC had sufficient assets to complete the job as bid. The contract between NWP and GPPC was entered into in Utah and explicitly required the application of Utah law. Utah has a bond statute (Utah Code § 14–2–2) that operates parallel to a mechanic's lien law. NWP did not require GPPC to post a bond under the Utah statute, thus waiving the requirement and reducing the contract costs by the sum of $160,000 representing the bond premium.

The construction was to begin in October of 1992, but FERC's notice to proceed was not issued until November 16, 1992, three weeks later than expected. At that time GPPC began the mobilization of men and equipment, and actual construction started in early December of 1992.

In January of 1993, GPPC notified NWP that Spread 2 could not be completed as originally bid due to delays in starting, extreme weather conditions, and underestimations in the cost of the project. NWP obtained bids to complete construction from several other contractors, but elected to have GPPC complete the job since GPPC's cost to complete the project was far less than the other contractors' bids. Thereafter, NWP and GPPC renegotiated the contract, and construction continued through April of 1993. However, in May of 1993, GPPC halted construction, leaving subcontractors, equipment lessors, insurance providers, and other vendors unpaid in amounts exceeding $6 million. NWP refused to make further payments to GPPC, but did pay Precision Blasting and Smackover Pressure Testing from the retainage.

## II.

### PROCEDURAL BACKGROUND

Thereafter, GPPC filed a claim of lien against NWP and the pipeline and informed the subcontractors to do the same, because GPPC was unable to pay them. Approximately fifty subcontractors, equipment lessors, insurance providers, and other vendors filed claims of lien against NWP. In addition, on May 8, 1993, NWP filed suit against GPPC in Utah state court for breaching the prime contract. In July of 1993, the subcontractors, equipment lessors, insurance providers and vendors, including GPPC, filed complaints against NWP in the district court in Idaho in Bannock County in the Sixth Judicial District. Those actions included foreclosure of mechanics' liens, claims under Utah's bond statute, and allegations of unjust enrichment.

On August 5, 1993, GPPC was dismissed from the Idaho suit; however, the other various claims remained in Idaho and were consolidated into the present litigation regardless of the county in which the work on Spread 2 may have been accomplished. The case was eventually removed to federal court where GPPC was forced by NWP into involuntary bankruptcy. Some of the pending claims were settled in the bankruptcy action. In January of 1994, the Idaho and Utah state court actions were removed to federal district court, but in August of 1994, the federal court remanded the subcontractors' claims to the Idaho state court.

On September 16, 1994, following remand to the state court, the district court in Bannock County issued a memorandum decision determining several of the initial, controlling issues. The district court held that NWP's waiver of the Utah bond requirement allowed the subcontractors and vendors to invoke the Utah private payment bond statute as a remedy. The district court also held that Idaho's mechanic's lien statutes applied to those claimants who had supplied tools and equipment, and who had supplied rental equipment and machinery but did not apply to those claimants who had supplied repair parts. In a later memorandum decision, the district court also held that suppliers of insurance have a lien claim under I.C. §§ 45–501 to –524 and a claim under Utah Code § 14–2–2.

Consistent with its memorandum decisions, the district court granted NWP summary judgment on March 13, 1995, as to K & O's lien claim for repair parts. Thereafter, the district court dismissed K & O's Utah bond statute claim, and eventually dismissed K & O's unjust enrichment claim as a matter of law.

After most of the claims against NWP were settled and K & O's action dismissed, sixteen claimants remained. Of those sixteen, fourteen were represented by Louis Racine, Jr. (Racine Subcontractors).[1] Subse-

---

1. The fourteen Racine Subcontractors are: Great Plains Pipeline Equipment, Inc. (GPE), Michetti Pipe Stringing (Michetti), Beard Oil Petroleum, Inc. (Beard Oil), Atlas Copco Rental, Inc. (Atlas),

CRC–Evans Pipeline International, Inc. (CRC–Evans), Courtesy Ford Lincoln Mercury, Inc. (Courtesy Ford), Cowboy Oil Co. (Cowboy Oil), Darby Enterprises, Inc. (Darby), Hartford Insur-

quently, the district court bifurcated the claims, holding that the Idaho lien claims and the unjust enrichment claims were equitable in nature and thus were not proper for determination by a jury. The district court concluded that the bond claims would be tried to a jury, but because the bond and lien claims were identical both would be tried together with the jury's verdict being advisory to the court as to the lien claims.

The trial on the remaining bond and lien claims lasted from April 27, 1995, to June 23, 1995. On June 26, 1995, the jury returned a special verdict on the sixteen claims under the Utah payment bond statute theory and found in favor of thirteen claimants. Cowboy Oil, V–1 Oil, and GPE did not recover from the jury on the bond statute theory. The district court reserved decision on the lien claims.

Following a trial on the unjust enrichment claims, on January 8, 1996, the district court entered a memorandum decision and findings of fact regarding the lien claims and the unjust enrichment claims. The district court held in favor of the sixteen remaining claimants. On March 15, 1996, the district court entered an *errata* memorandum decision to correct the amounts awarded to the claimants under the unjust enrichment theory.

All parties moved for attorney fees, costs and prejudgment interest, and on July 19, 1996, the district court awarded fees and costs to the prevailing claimants totaling more than $800,000 against NWP. NWP was awarded just over $5,000 in costs and fees against K & O. Consistent with the jury verdict and various decisions, the final judgment and decree of foreclosure was entered against NWP. The collective amount of the final judgment and decree of foreclosure against NWP exceeded $3 million.

## III.

### ISSUES ON APPEAL

A. NWP presents the following issues on appeal:

1. Whether the district court erred in determining that suppliers of leased equipment, insurance and fuel are covered under Idaho's lien statutes.

2. Whether the district court erred in determining that the claims of lien adequately describe the property.

3. Whether the district court erred in allowing claims based on Utah's private bond statute.

4. Whether the district court erred in allowing the claimants' unjust enrichment claims, and in determining that NWP had received unjust enrichment.

5. Whether the district court erred in reversing the jury verdict on Michetti's claims.

6. Whether the district court erred in calculating Hartford's lien claim.

7. Whether the district court improperly found in favor of GPE on its lien and unjust enrichment claims.

8. Whether the district court erred in refusing to give preclusive effect to the jury's verdict.

9. Whether the district court erred in refusing to allow and consider NWP's equitable defenses.

10. Whether the district court erred in awarding attorney fees, costs and prejudgment interest against NWP.

B. The subcontractors raise the following issues on cross-appeal:

1. Whether the district court erred in refusing to allow the claims for punitive damages.

2. Whether the district court erred in denying CRC–Evans and Courtesy Ford's claims for repair parts.

3. Whether the district court erred in determining that the "open account" defense barred the claims of lien by Valley Office Systems and Hartford Insurance.

4. Whether B.D. Holt's claim of lien was untimely recorded.

---

ance Co. (Hartford), Pickard Tate & Allen (PTA), Rasmussen Equipment Co. (Rasmussen), Rocky Mountain Machinery Co. (Rocky Mountain), V–1

Oil Co. (V–1 Oil), and Valley Office Systems, Inc. (Valley Office).

C. On appeal from the district court's summary judgment decision, K & O presents the following issues:

1. Whether the district court erred in granting summary judgment to NWP, thus, dismissing K & O's mechanic's lien, Utah bond statute, and unjust enrichment claims.

2. Whether the district court erred in awarding attorney fees and costs to NWP.

## IV.

## DISCUSSION

■ Before we address the issues raised, we note that this Court must defer to findings of fact based upon substantial evidence but will review freely the conclusions of law reached by stating legal rules or principles and applying them to the facts found. *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). Accordingly, we exercise free review over the district court's conclusions of law. *Kawai Farms, Inc. v. Longstreet*, 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992).

## A

### NWP'S ISSUES

1. **WHETHER THE DISTRICT COURT ERRED IN DETERMINING THAT SUPPLIERS OF LEASED EQUIPMENT, INSURANCE AND FUEL ARE COVERED UNDER IDAHO'S LIEN STATUTES.**

a. **Suppliers of leased equipment.**

We first consider whether the district court erred in allowing lien claims for equipment lessors. The claims sought recovery of unpaid rental charges on leased equipment. NWP contends that Atlas, CRC–Evans, Darby, GPE, Rocky Mountain, Rasmussen and Cate–Idaho should not have been allowed to pursue liens pursuant to I.C. § 45–501 because the statute does not encompass lessors of equipment.

■ The right to acquire and enforce a mechanic's or materialman's lien was unknown at common law and originally was also not allowed in equity. R.Y. Liang, Annotation, *Charge for Use of Machinery, Tools, or Appliances Used in Construction as Basis for Mechanic's Lien*, 3 A.L.R.3d 573 (1965). Because such a right exists solely as a result of statutory enactment, it depends entirely upon application of the statute involved. *Id.* at 577.

Idaho Code § 45–501 provides:

> **Right to lien.**—Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, dike, flume, tunnel, fence, machinery, railroad, wagon road, aqueduct to create hydraulic power, or any other structure, or who grades, fills in, levels, surfaces or otherwise improves land ... and every professional engineer or licensed surveyor under contract who prepares or furnishes designs, plans, plats, maps, specifications, drawings, surveys, estimates of cost, on site observation or supervision, or who renders any other professional service whatsoever for which he is legally authorized to perform in connection with any land or building development or improvement, or to establish boundaries, has a lien upon the same for the work or labor done or professional services or materials furnished.

NWP asserts that I.C. § 45–501 applies only to persons "performing labor upon" or "furnishing materials to be used in" construction projects, and does not apply to lessors of equipment. We agree.

■ When applying this statute, this Court has held the provisions are to be liberally construed in the favor of the persons who perform labor upon or furnish materials to be used in the construction, alteration, or repair of a building or structure. *Pierson v. Sewell*, 97 Idaho 38, 539 P.2d 590 (1975); *Dybvig v. Willis*, 59 Idaho 160, 82 P.2d 95 (1938). The rule of liberal construction of statutory liens, however, does not permit the court to create a lien where none exists or was intended by the legislature. *Boone v. P*

*& B Logging Co., Inc.*, 88 Idaho 111, 397 P.2d 31 (1964).

In determining who may assert a lien against a landowner's property pursuant to I.C. § 45–501, this Court has stated,

> Under this statute the legislature evidently intended to grant the right to claim a lien to any person who contributes labor or materials for the construction, alteration, or repair of a building or structure upon real property.... [I]t was clearly the intent of the legislature to grant an absolute lien direct upon the property, to the person who performs labor upon, or furnishes materials to be used in a building, structure or other improvement without reference to whether such person performing such labor, or furnishing material, is an original contractor or subcontractor, or a laborer or a materialman, and without reference to whether there is anything due the original contractor from the person or corporation constructing such building or other improvement.

*Hill v. Twin Falls Water Co.*, 22 Idaho 274, 279, 125 P. 204, 206 (1912). Referring to I.C. § 45–501, this Court has also held that the statute

> grant[s] the right to claim a lien for "the value of the labor or material furnished and used in or about the construction, alteration or repair of the building, structure or other works." That right of lien is based on the theory that the claimant has, either by his labor or by the materials furnished and used, contributed to the construction or improvement of the property against which the lien is asserted. Hence, where the labor is not used or the materials are not incorporated into the building, structure or improvement, no lien on land or building results.

*Chief Industries, Inc. v. Schwendiman*, 99 Idaho 682, 687, 587 P.2d 823, 828 (1978) (*quoting Chamberlain v. City of Lewiston*, 23 Idaho 154, 163, 129 P. 1069, 1071 (1912)) (citations omitted, emphasis deleted). In the *Chamberlain* case, a lien was claimed for the construction of an extension into the Clearwater River of the intake pipe servicing the pumping plant of the water system of the City of Lewiston. A portion of the claim of lien was for labor and material furnished to build a coffer-dam in the river preparatory to construction of the pipe extension. The coffer-dam subsequently washed out and was swept away by a flood. On appeal, the city argued that the coffer-dam was not part of the contract in the case, and its loss therefore was beyond the liability of the city. In response, the Court held that construction of the pipe extension necessitated the building of the coffer-dam or some similar method in order to do the work. As to the loss of the labor and materials that went into the dam, the Court said:

> When a man contracts to have a building erected, he knows that the contractors and builders will be obliged to have scaffolding and other material that does not actually go into the building, but which may practically be used and consumed and destroyed in the course of the work. Such material and the labor incident thereto is as much a part of the contract as if it were specified and set forth in the contract itself.

23 Idaho at 165, 129 P. at 1072. Accordingly, the Court allowed recovery for the labor and materials that went into the coffer-dam before it was destroyed.

The use of equipment in carrying out labor or providing materials is analogous to the use of tools discussed in two prior Idaho cases. In *Naylor v. Lewiston & S.E. Elec. Ry. Co.*, 14 Idaho 789, 96 P. 573 (1908), this Court addressed whether a supplier of tools would be entitled to a claim of lien. The Court held that the charge for the use of tools consumed in construction work is a lienable item. *Id.* at 802, 96 P. at 576. The Court stated that,

> if a person furnishes tools which are used and consumed in the construction of work, such person would be entitled to a lien for the same reason that gives a lien for the use and consumption of material. The use and consumption of tools ought to give the same right as the use and consumption of materials.

*Id.* Likewise, while addressing the opposite situation, the Court in *Ninneman v. City of Lewiston*, 23 Idaho 169, 129 P. 1073 (1912), disallowed a lien for tools that were not used or consumed in the pipe extension repair

work discussed in *Chamberlain*. The Court said:

It will be necessary, however, for the judgment to be modified in this case so as to eliminate therefrom the value of tools and appliances which did not go into or become a part of the work or improvement, and were not used or consumed in or about the work. A lien cannot be allowed for tools and appliances which are the property of the contractors and may be used from time to time in other works *or which do not go as a part of the building or improvement and necessarily enter therein.*

23 Idaho at 171, 129 P. at 1073 (emphasis supplied).

■ Similarly here, the leased equipment was not incorporated into, or consumed and destroyed by, the construction project. The district court below, however, adopted the reasoning of the Wyoming Supreme Court in *United Pacific Ins. Co. v. Martin & Luther General Contractors, Inc.*, 455 P.2d 664 (1969), and concluded that rented equipment is "consumed" to the extent that its measurable useful life is diminished while the equipment is put to use on a project. In essence this reasoning allows for the assertion of a lien based upon a theory of partial consumption of the asset.

We are not persuaded to follow the lead of the Wyoming court, and we reject the suggestion that there may be a partial consumption of equipment as a basis for permitting a claim of lien under I.C. § 45–501. Consistent with the previous expressions of this Court about the consumption or destruction of items which may serve as the basis for a lien, we find enlightening the decision of the Rhode Island Supreme Court:

There is little doubt that Logan contributed to the value of the construction project by leasing equipment to the Lawrence Group. The contribution of value, however, is not what the statute requires. Rather, the furnishing of labor or materials forms the basis for a mechanic's lien.

. . .

"It is generally held under applicable lien laws that machinery not (a) totally depreciated by use on the property or (b) incorporated into the improvement, or (c)

in connection with which labor was also supplied could not be the basis of a valid lien." *Air Service Co. v. Cosmo Investments, Inc.*, 115 Ga.App. 596, 597, 155 S.E.2d 413, 414 (1967). The excavation equipment in question was not totally depreciated by its use, nor was it incorporated into the improvement. Therefore, it does not satisfy the definition of materials.

. . .

Logan's appeal now turns on a contention that he did work. "It is well settled that the rental or the value of the use of machinery cannot be the basis for the claim of a mechanic's lien." *Wilkinson v. Pacific Mid–West Oil Co.,* 152 Kan. 712, 714, 107 P.2d 726, 727 (1940). Fifty years later, this statement still represents the majority view. Some jurisdictions have amended their statutes to include expressly the rental of equipment as the basis for a lien. But when the statute speaks only in terms of work done or materials furnished, as does our own law, jurisdictions generally deny recovery.

*Logan Equipment v. Profile Constr. Co.*, 585 A.2d 73, 74–75 (R.I.1991).

Like the Rhode Island court, the New Mexico Supreme Court held that rent for equipment used in excavation and comparable construction work was not a lienable item. The court said:

While we may feel that in view of our changed methods and construction work generally, and the increased and ever-increasing use of machinery to replace manual labor, the rental of such machinery might well be the basis of a claim of lien, we do not find such to be the law as it exists in New Mexico today; nor do we believe we should enlarge the scope of our present lien law by judicial construction, but that the wisdom and necessity of so doing should be determined by and left to the legislature.

*Lembke Constr. Co., Inc. v. J.D. Coggins Co.*, 72 N.M. 259, 382 P.2d 983, 989 (1963)

Similar to the conclusions reached by the Rhode Island and New Mexico courts with regard to their lien statutes, we hold that under I.C. § 45–501 a rental charge for

equipment used in construction will not serve as the basis for a mechanic's or material-man's lien. Although this proposition may appear inequitable in light of the value contributed to the construction project by the use of the claimants' equipment, we cannot supply new statutory meaning where the legislature has not clearly spoken. If the legislature wishes to extend the protection of the mechanic's and materialman's lien statute to lessors of equipment, then the legislature may amend the statute as other jurisdictions have done. Until then, this Court is constrained by the present terms of the statute.

The district court's decision, allowing recovery by way of mechanic's liens under I.C. § 45–501 of unpaid rental charges for leased equipment, is set aside. The judgment is vacated insofar as directing the foreclosure of the lien claims of Atlas Copco Rental, CRC–Evans Pipeline, Darby Enterprises, Great Plains Equipment, Rocky Mountain Machinery, and Cate–Idaho.

### b. Suppliers of Insurance.

■ We next consider whether Idaho's mechanic's lien statute applies to the recovery of unpaid insurance premiums by a supplier of insurance. Only one insurance provider, Pickard Tate & Allen (PTA), was permitted by the district court to foreclose its claim for a lien under I.C. § 45–501. PTA had contracted with GPPC to provide general liability and equipment insurance for the Spread 2 project. The district court concluded that PTA contributed to the construction of the Spread 2 project by providing insurance coverage to the general contractor. The district court held that "[a] portion of each [insurance] contract was consumed during the construction of [NWP's] pipeline." Consequently, the district court held that PTA had a valid lien claim for its unpaid insurance premiums.

NWP contends that PTA cannot recover under the lien statutes because the insurance provided continues beyond the completion of the project. Thus, the insurance is not labor

and is not consumed within the project.[2] We agree.

As previously stated, the underlying purpose of Idaho's lien statutes is to protect those who perform labor or furnish material to the extent of the value that the owner's property is improved. The providing of liability insurance coverage is neither labor nor material that is consumed in the process of structurally improving real property. As with the claim for recovery of rental payments due for the lease of equipment, the liability insurance premium claim fails because it is not within the mechanic's lien statute. *Compare* I.C. § 45–517, which provides that the cost of worker's compensation insurance shall be considered "labor" for the purpose of collecting under Idaho's mechanic's lien statute. While the legislature has provided protection for the recovery of worker's compensation security in the mechanic's lien laws, it has not so provided for any other form of insurance.

We therefore hold that PTA's claim for unpaid premiums relating to general liability and equipment insurance relating to the Spread 2 project is not protected by Idaho's lien statutes. The district court's decision to the contrary is set aside, and the judgment allowing foreclosure of PTA's claim of lien is vacated.

### c. Suppliers of Fuel.

■ NWP contends that the district court erred in holding that suppliers of fuel and lubrication products used for construction equipment and passenger vehicles, such as was provided to GPPC by Beard Oil, can recover under Idaho's mechanic's lien statute. Moreover, NWP asserts that Beard Oil essentially acted as a lender to GPPC by arranging to extend a general line of credit to GPPC for fuel and that lenders have no lien rights. NWP's lender theory traces the following path: Beard Oil, of Michigan, would contract with local suppliers for delivery of fuel to tanks and GPPC's construction

---

2. NWP also argues that the other insurance provider, Hartford, should not be allowed to assert a claim of lien for unpaid worker's compensation insurance premiums. Although Hartford was allowed to bring a lien claim for its unpaid insurance premiums, the district court denied Hartford's claim on the ground that it was barred by the open account defense. *See infra* Part IV(B)(3) of this opinion. Thus, we need not address the viability of Hartford's claim of lien.

yard; Beard Oil would then add on its 30% mark-up to the cost of the fuel, carry the account as a receivable and bill it, with the mark-up, to GPPC. This process, opined NWP, made Beard Oil a lender of credit to GPPC. The district court rejected NWP's theory and again followed the Wyoming court in *United Pacific Ins. Co. v. Martin & Luther General Contractors, Inc., supra,* by holding that because fuel and oil were materials used and consumed in the construction of Spread 2, Beard Oil's charges were the proper subject of a lien claim.

For the same reasons stated above with regard to the rental of equipment and providing of liability insurance, we conclude that Beard Oil was not entitled to claim a lien for its fuel and oil account. We reach this conclusion with some guidance from the decisions of this Court in *State ex rel. Modern Motor Co., Inc. v. H & K Construction Co.,* 75 Idaho 492, 274 P.2d 1002 (1954), and *People ex rel. White v. Storm,* 49 Idaho 246, 287 P. 689 (1930). In each of those cases, the Court decided that costs for gasoline and oil supplied in highway construction are recoverable under Idaho's public contractor's bond statute as indirectly contributing to the work, while recognizing that similar claims for recovery for fuel are not permissible under the mechanic's lien statute because such is not "labor and materials that are lienable under the mechanic's lien law in its relation to private structures." *Modern Motor,* 75 Idaho at 495, 274 P.2d at 1003; *White,* 49 Idaho at 246, 287 P. at 692. Accordingly, we set aside the district court's decision that permitted Beard Oil to pursue a claim of lien for supplying fuel products, and we vacate that portion of the judgment allowing foreclosure of Beard Oil's claim of lien.

## 2. WHETHER THE DISTRICT COURT ERRED IN DETERMINING THAT THE CLAIMS OF LIEN ADEQUATELY DESCRIBE THE PROPERTY.

■ In addition to directly challenging the underlying bases asserted by the various plaintiffs claiming lien rights, NWP contends that the lien claims failed to sufficiently describe the property pursuant to I.C. § 45–507. NWP submits that the claimants did not provide descriptions by metes and bounds, but rather described the property as "the pipeline," which is underground and cannot be found in the public records. As a result of our conclusions that liens could not be claimed for equipment rental, for fuel and oil products or for liability and equipment insurance, this challenge is reduced to consideration of the lien of only one claimant—Michetti Pipe Stringing.

■ Idaho Code § 45–507 provides that the notice of a claim of lien must contain "a description of the property to be charged with the lien, sufficient for identification." If the "claim of lien has a fatally defective description, there can be no valid lien." *Chief Industries, Inc. v. Schwendiman,* 99 Idaho at 685, 587 P.2d at 826. Where there is no building or structure that can be properly identified, the claim of lien must contain a sufficient description in order for the court or an interested third person to identify the property against which the lien is asserted. *Id.* at 686, 587 P.2d at 827. The description will be sufficient if it enables "a party familiar with the locality to identify the premises intended to be described with reasonable certainty, to the exclusion of others." *Turnboo v. Keele,* 86 Idaho 101, 105, 383 P.2d 591, 593 (1963). Whether the description in any particular case is sufficient for identification is a question of fact to be determined by the jury or the court upon a consideration of the circumstances of the case, and "where the controversy involves only the rights of the lien claimants and the owners, 'unless the description was such as to mislead the owner, any mere lack of accuracy therein is not available as a defense.'" *Id.* at 106, 383 P.2d at 594 (*quoting Union Lumber Co. v. Simon,* 150 Cal. 751, 89 P. 1077 (1906)).

The sufficiency of the description in the liens was determined by the district court, as the trier of fact concerning the claims of liens, upon motions by the parties for summary judgment. *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982). The district court concluded with respect to this issue:

[The] Plaintiffs have demonstrated by affidavit that, through the use of the prop-

erty descriptions contained in the liens, two different people familiar with the locality have been able to identify the property with reasonable certainty. Due to the unique nature of the project at issue, it is apparent that any person familiar with the surrounding area, accompanied by the maps and diagrams provided and referenced in plaintiffs' lien, would be able to locate the liened property.

This Court concludes as a matter of law that the property descriptions contained in the liens filed by all of the plaintiffs are sufficient for purposes of identification.

We agree and hold that the property descriptions contained in the claims of lien substantially complied with I.C. § 45–507 and sufficiently identified the liened property.

### 3. WHETHER THE DISTRICT COURT ERRED IN ALLOWING CLAIMS BASED ON UTAH'S PRIVATE BOND STATUTE.

We turn next to whether the district court erred in allowing recovery to several of the plaintiffs who asserted claims based on Utah's private bond statutes, Utah Code §§ 14–2–1 and 14–2–2, as an alternative theory for recovery of the unpaid amounts due the subcontractors when GPPC terminated construction of the pipeline. The district court agreed with the plaintiffs and held that

those parties whose claims of lien were determined to be defective could pursue a cause of action under the Utah statutes.

The contract between NWP and GPPC contained a provision stating: "This Contract and the rights and obligations of the parties shall be governed by and interpreted in accordance with the laws of the State of Utah." [3] The district court held that this provision permitted the plaintiffs to invoke the Utah private bond statutes as third party beneficiaries to the arrangement between NWP and GPPC. In particular, Utah Code § 14–2–1 requires a landowner to secure a bond from a contractor for certain construction projects on his property.[4] Under Utah Code § 14–2–2, if the owner fails to secure the bond required by Utah Code § 14–2–1, a person who performed a labor or service, or supplied equipment or materials to the construction project, has a private cause of action against the property owner for the reasonable value of the labor or service performed or the equipment or materials furnished.[5] Notwithstanding their reference to "the laws of the State of Utah" in their contract, NWP and GPPC decided to waive the bond that otherwise would have been required by § 14–2–1, thereby saving the sum of $160,000 for the cost of the bond. The district court held that NWP's failure to obtain the payment bond referred to in the

---

**3.** Choice-of-law provisions are recognized in Idaho both in commercial and noncommercial transactions. I.C. § 28–1–105(1); *Cerami–Kote, Inc. v. Energywave Corp.*, 116 Idaho 56, 58, n. 1., 773 P.2d 1143, 1145, n. 1, (1989); *Ward v. Puregro Co.*, 128 Idaho 366, 368–69, 913 P.2d 582, 584–85 (1996) (noting Idaho's adoption of Restatement (Second) of Conflict of Laws § 187).

**4.** Utah Code § 14–2–1 provides in part:
 (1) For purposes of this chapter:
 (a) "Contractor" means any person who is or may be awarded a contract for the construction, alteration, or repair of any building, structure, or improvement upon land.
 (b) "Owner" means any person contracting for construction, alteration, or repair of any building, structure, or improvement upon land.
 (2) (a) Except as provided in Subsection (2)(b), before any contract exceeding $2,000 in amount for the construction, alteration, or repair of any building, structure, or improvement upon land is awarded to any contractor, the owner shall obtain from the contractor a payment bond complying with Subsection (3).

The bond shall become binding upon the award of the contract to the contractor.
 . . .
 (3) The payment bond shall be with a surety or sureties satisfactory to the owner for the protection of all persons supplying labor, services, equipment, or material in the prosecution of the work provided for in the contract in a sum equal to the contract price.

**5.** Utah Code § 14–2–2 provides in part:
 (1) Unless exempted under Section 14–2–1, an owner who fails to obtain a payment bond is liable to each person who performed labor or services or supplied equipment or materials under the contract for the reasonable value of the labor or service performed or the equipment or materials furnished up to but not exceeding the contract price.
 . . .
 (3) In an action for failure to obtain a bond, the court may award reasonable attorneys' fees to the prevailing party. These shall be taxed as costs in the action.

Utah statutes rendered it liable to the subcontractors whose claims were unsecured by liens, as intended third party beneficiaries of the construction project.

In reaching its decision, the district court stated that *Seubert Excavators, Inc. v. Eucon Corp.*, 125 Idaho 744, 753, 874 P.2d 555, 564 (Ct.App.1993), *review granted, modified on other grounds*, 125 Idaho 409, 871 P.2d 826 (1994), "demonstrate that the plaintiffs are properly regarded as third party beneficiaries of the contract under *Idaho Code* § 29–102 (1980)[6] and are allowed to enforce the provisions of the contract and rely on it for protection." We disagree with the district court's application of *Seubert*.

■ The *Seubert* case involved a claim by a subcontractor against the surety on a public works contract bond required by the state of Washington. The surety argued that an unpaid subcontractor cannot maintain a third party beneficiary cause of action against the surety. On appeal, the Idaho Court of Appeals determined that the subcontractor could proceed under I.C. § 29–102 as a third party beneficiary of a contract made for its direct benefit as an intended result of Washington's public contracts bond statute because the bond had been issued for the protection and benefit of subcontractors. The court applied I.C. § 29–102 because Washington law had not been pled as a basis for relief, and the case was tried under Idaho law. 125 Idaho at 753, n. 7, 874 P.2d at 564, n. 7. On review, however, this Court bypassed determining the application of I.C. § 29–102 and simply stated that: "[T]his Court has long held that unpaid subcontractors are third party beneficiaries of performance and payment bonds which are virtually identical to the one at bar and which are executed by guarantors in favor of the owners of particular projects." 125 Idaho at 417, 871 P.2d at 832. Thus, *Seubert* stands for the proposition that, where a performance or payment bond exists, a subcontractor is a third party beneficiary of the bond as a matter of law and can bring a direct action against the surety or guarantor on the bond.

*Seubert* does not stand for the proposition that a subcontractor is the third party beneficiary of any other type of contract or that failure to require or to obtain a private contractor's bond places the subcontractor, who would otherwise have been protected with the bond, in the status of a third party beneficiary of a contract between the general contractor and the property owner.

■ Here, it appears that the Utah code provisions were adopted by the Utah legislature as measures intended to apply to construction contracts in the state of Utah. There is no indication in the Utah statutes that they should have any extraterritorial effect. The Utah statutes were not "contracts" made for the benefit of third persons. The statutes contemplated the existence of a payment bond which could be resorted to by subcontractors in Utah for payment of sums due them. Failure to obtain the payment bond would render the owner liable to a subcontractor in Utah—not because the subcontractor was the third party beneficiary of a contract—but by virtue of the terms of the statute.

As noted, Idaho Code § 29–102 provides that a contract made expressly for the benefit of a third person may be enforced by the third person at any time before the parties thereto rescind it. Here, the contract entered into between NWP and GPPC was not made expressly for the benefit of any of the plaintiffs as third parties to the arrangement between NWP and GPPC. The contract merely referenced Utah law, and so far as applicable, § 14–2–2 of the Utah Code protects subcontractors in Utah, not because of a status as contractual third party beneficiaries, but by virtue of statutory grace.

We hold that the generalized statement in the NWP–GPPC contract, that the contract and the rights and obligations of the parties shall be governed by and interpreted in accordance with the laws of the State of Utah, does not suffice to invoke the terms of I.C. § 29–102, as "a contract made expressly for the benefit of a third person." The district

---

6. Idaho Code § 29–102 provides:
 **Enforcement by beneficiary**— A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.

court's decision that the plaintiffs who did not have valid liens could recover under the Utah bond statutes, as an alternative theory, is vacated.

## 4. WHETHER THE DISTRICT COURT ERRED IN ALLOWING THE UNJUST ENRICHMENT CLAIMS.

We next address the viability of the unjust enrichment claims. NWP contends that the subcontractors, not in privity with NWP, cannot recover under an implied contract claim. The district court acknowledged that a subcontractor cannot sue an owner for quantum meruit based on an implied promise to pay, but held that an unjust enrichment claim is not based on an implied promise to pay. In this regard, the district court misapplied *Dale's Service Co., Inc. v. Jones*, 96 Idaho 662, 534 P.2d 1102 (1975), and incorrectly created a distinction between an action for quantum meruit and unjust enrichment because both quantum meruit and unjust enrichment do involve claims based on an implicit promise to pay.[7] In *Continental Forest Products, Inc. v. Chandler Supply Co.*, 95 Idaho 739, 518 P.2d 1201 (1974), this Court recognized three types of contractual arrangements:

First is the express contract wherein the parties expressly agree regarding a transaction. Secondly, there is the implied in fact contract wherein there is no express agreement but the conduct of the parties implies an agreement from which an obligation in contract exists. The third category is called an implied in law contract, or quasi contract. However, a contract implied in law is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent or the agreement of the parties and, in some cases, in spite of an agreement between the parties. It is a non-contractual obligation that is to

be treated procedurally *as if* it were a contract, and is often referred to as quasi contract, unjust enrichment, implied in law contract or restitution.

*Id.* at 743, 518 P.2d at 1205 (citations omitted; emphasis in original). In *Smith v. Smith*, 95 Idaho 477, 511 P.2d 294 (1973), the Court noted that:

"Restitution" and "unjust enrichment" are the modern designations for the older doctrine of "quasi contracts." The substance of an action for unjust enrichment *lies in a promise, implied by law*, that a party will render to the person entitled thereto that which in equity and good conscience belongs to the latter. (Citations omitted; emphasis supplied.)

 The two theories, quantum meruit and unjust enrichment, are simply different measures of recovery as equitable remedies. The doctrine of quantum meruit permits recovery, on the basis of an implied promise to pay, of the reasonable value of the services rendered or the materials provided. *Peavey v. Pellandini*, 97 Idaho 655, 551 P.2d 610 (1976). Unjust enrichment, as a fictional promise or obligation implied by law, allows recovery where the defendant has received a benefit from the plaintiff that would be inequitable for the defendant to retain without compensating the plaintiff for the value of the benefit. *Continental Forest Products, Inc.*, 95 Idaho at 743, 518 P.2d at 1205.

 Neither of these two theories allows recovery by a subcontractor who lacks a contractual relationship directly with a property owner. While couched in terms of discussing a claim for recovery on the basis of quantum meruit, this Court's decision in *Dale's Service* is equally dispositive as to a subcontractor's claim for recovery on a theory of unjust enrichment arising from an implied obligation. There the Court held:

---

7. The district court distinguished the present case from *Dale's Service* on the ground that the action in *Dale's Service* was based solely on quantum meruit. In addition, the court concluded that unjust enrichment was available to the plaintiffs under *Idaho Lumber, Inc. v. Buck*, 109 Idaho 737, 710 P.2d 647 (Ct.App.1985). The *Buck* case is inapposite. It involved a claim of

unjust enrichment brought against a landlord by the contractor who had contracted with the tenant to remodel the demised premises. The case did not address a claim for unjust enrichment brought by a subcontractor who had not been paid by its contractor, as occurred in *Dale's Service*.

We do not believe that T & J [the subcontractors] have a basis for recovery against O.K. [the landowner] under a quantum meruit theory. The general rule in this area is that a subcontractor who furnishes material or labor pursuant to an agreement with, or upon the order and credit of a general contractor cannot recover against the property owner upon the basis of an implied promise to pay arising from the owner's receipt and acceptance of the benefit of the material and labor furnished. Thus it is said that a landowner will not be held liable for work or material furnished by a subcontractor to a contractor, pursuant to a contractual arrangement between the contractor and subcontractor, where the landowner is not a party to this contractual arrangement.

. . .

It is true that there is an exception to this general rule under the mechanic's lien laws, where if a subcontractor is not paid, he may enforce his claim for compensation directly against the landowner. However, T & J did not avail themselves of this remedy, and therefore this exception is inapplicable to the case at hand.

*Dale's Service*, 96 Idaho at 666–67, 534 P.2d at 1106–07. In the present case, the plaintiff subcontractors, who did not have express contracts directly with NWP, were limited to recovery upon their claims under the mechanic's lien statute. Absent that right of recovery, they have no cause of action directly against NWP for alleged unjust enrichment.

The decision of the district court allowing recovery to the subcontractors as plaintiffs on the grounds of unjust enrichment are set aside, and the judgments entered on those theories are vacated.

### 5. WHETHER THE DISTRICT COURT ERRED IN REVERSING THE JURY VERDICT ON MICHETTI'S CLAIMS.

Michetti contracted with GPPC to load, haul and string eighty-foot sections of pipe along NWP's Spread 2 pipeline expansion project. On Michetti's Utah bond claims, the jury returned a verdict for Michetti on its contract at $1.10 per foot but did not award Michetti additional costs because the jury found that the contract had not been modified. The district court held that the evidence was clearly insufficient to support the jury verdict and granted a new trial as to the Utah bond claims. Holding that the jury's verdict was advisory as to the lien and unjust enrichment claims, the court then awarded Michetti additional costs because the court found that the contract was modified as to Michetti's lien and unjust enrichment claims.

On appeal, NWP argues that the district court incorrectly rejected the jury's verdict and determined that Michetti's contract with GPPC was modified. NWP asserts that the jury's verdict should be upheld and that the contract was not modified because there was no new consideration, the new contract price was not included in any modification, and there was no impossibility preventing performance. Furthermore, NWP asserts that the district court erred in granting Michetti a new trial as to the Utah bond claims.

We agree that the district court erred in granting a new trial on the alternative cause of action based upon the Utah bond statute, for the reasons stated in part IV(A)(3), above. The issue remains, however, whether the contract between Michetti and GPPC was modified, thus allowing Michetti to recover additional amounts over those found by the advisory jury on the lien claim.

Michetti's original bid to string the pipe was for $1.27 per foot of pipe installed. However, Michetti eventually lowered its bid to $1.10 per foot based on the projection that Michetti could string 13,000 feet per day and complete the project in thirty-five days. The bid included a projected profit of $50,000.

GPPC then awarded Michetti the contract and notified Michetti that the stringing was to begin during the week of December 2, 1992. On December 1, 1992, Michetti sent its foreman to the job site to mobilize equipment and personnel. However, the combination of the mountainous terrain and extreme weather conditions caused Michetti's personnel to conclude that the project was possible but not for the prices quoted in Michetti's bid. Michetti asserted that its vice-presi-

dent, Ralph McKinstry, met with GPPC, and the parties modified the $1.10 per foot contract.

NWP argued that no modification took place. NWP conceded that Michetti was entitled to recover on its lien claim for the amount due under the original contract of $1.10 per foot, but contended that Michetti was not to recover extra compensation beyond the original contract price because of the alleged late start and weather conditions. Following a jury trial on the Utah bond claims, the jury returned a verdict for Michetti for $1.10 per foot, but did not award additional costs because the jury found that the contract was not modified. Thus, the jury found the unpaid amount on the original contract between Michetti and GPPC to be $284,288.85. The district court held that the evidence was clearly insufficient to support the jury's verdict and ordered a new trial as to the Utah bond claims.

In *Ore–Ida Potato Products, Inc. v. Larsen*, 83 Idaho 290, 296, 362 P.2d 384, 387 (1961), this Court stated that the general rule in Idaho is that "parties to an unperformed contract may, by mutual consent, modify [the contract] by altering, excising or adding provisions, and such modification may be by parol agreement though the contract is in writing." The Court further observed that "the party asserting the parol modification of the written contact ... has the burden of proving the modification by clear and convincing evidence." *Id.* at 293–94, 362 P.2d at 385. One party to a written contract cannot alter the terms of the contract,

> without the assent of the other [party] and that the minds of the parties must meet as to any proposed modification. The fact of agreement may be implied from a course of conduct in accordance with its existence and assent may be implied from the acts of one party in accordance with the terms of a change proposed by the other.

*Id.* at 296, 362 P.2d at 385.

■■■ Furthermore, general principles of contract law require that a contract modification, like the formation of any contract, must be supported by valid consideration. *Brand S Corp. v. King*, 102 Idaho 731, 733, 639 P.2d 429, 431 (1981). It is well estab-lished "that a promise to do, or the doing of, what one is already bound by contract to do, is not valid consideration." *Dashnea v. Panhandle Lumber Co., Ltd,* 57 Idaho 232, 238, 64 P.2d 390, 393 (1937) (*citing* 1 WILLISTON ON CONTRACTS, §§ 130, 130A). Conversely, the doing by one of the parties of something that he is not legally bound to do constitutes consideration for the other's promise to modify the terms of the original agreement. *Dashnea*, 57 Idaho at 238, 64 P.2d at 393.

■■■ Relying on the above stated principles, the district court held that clear and convincing evidence established that the original contract between Michetti and GPPC had been modified. The evidence included testimony that GPPC understood that the pipe stringing could not be accomplished as originally bid. The district court found that GPPC was aware of the treacherous weather conditions and knew the job would cost more than originally bid. Moreover, once Michetti informed GPPC that the job could not be done as bid for the original price, GPPC did not commence or threaten to commence any action legal or otherwise. The district court found that, instead, GPPC's president stated that the job could not be put off because NWP wanted the job done by April 1, and GPPC was not willing let NWP down. GPPC's president assured Michetti that GPPC would take care of the extra costs beyond the original $1.10 per foot bid. In fact, when Michetti prepared a job cost summary disclosing that Michetti lost a total of $187,524.04, GPPC tendered a check to Michetti for that amount. The check was later voided. Lastly, on projects completed by Michetti in the past, GPPC always modified the original agreements and paid any excess expenses incurred by Michetti. Based on this evidence, the district court held that the parties had modified the contract to include amounts in excess of the original $1.10 per foot bid.

Additionally, the district court concluded that the amount GPPC would eventually pay was sufficiently definite for the court to determine the acts to be performed by Michetti and GPPC under the modified contract. In consideration of Michetti staying on the job

and completing the pipe stringing before April 1, GPPC would pay the additional costs incurred. Thus, the district court concluded that Michetti was entitled to the additional costs incurred of $187,524.04. Moreover, because the additional costs consumed Michetti's anticipated profit amount of $50,000, the district court held that Michetti was also entitled to the lost profit amount of $50,000.

We conclude that the district court's order determining that the original contract between Michetti and GPPC was modified is supported by substantial competent evidence. Moreover, the amount of Michetti's charges were reasonable, and we affirm the district court's award of additional costs, plus Michetti's original bid and profit.[8]

### 6. WHETHER THE DISTRICT COURT ERRED IN CALCULATING HARTFORD'S LIEN CLAIM.

Hartford supplied worker's compensation insurance to GPPC for the Spread 2 project. The district court determined that the value of the insurance provided by Hartford on the Spread 2 project amounted to $987,118. The district court credited $643,932.43 in premiums paid by GPPC, leaving an unpaid amount of $343,185.57. Thus, the district court held that it would be unjust for NWP to retain the benefit of the insurance provided by Hartford and awarded Hartford $332,478.18. Additionally, the jury credited the premiums paid by GPPC on the bond statute claims and awarded Hartford $378,220. However, the district court did not credit the premiums paid by GPPC on Hartford's lien claims and held that for purposes of Hartford's lien claim, the unpaid amount of its contract with GPPC on the Spread 2 project amounted to $987,118. However, the district court determined that the open account defense barred Hartford's lien claim and awarded nothing to Hartford on its lien claim.

On appeal, NWP submits that if this Court reinstates Hartford's lien claim, then the district court erred in calculating the amount of Hartford's claim for worker's compensation premiums. NWP contends that Hartford did

not credit NWP for $644,483 in premiums paid on NWP's project, and the district court erred in holding that Hartford was not required to credit those portions of its claim that had already been paid. We conclude that this issue need not be resolved because the open account defense barred Hartford's lien claims. *See infra* Part IV(B)(3).

### 7. WHETHER THE DISTRICT COURT IMPROPERLY FOUND IN FAVOR OF GPE ON ITS LIEN AND UNJUST ENRICHMENT CLAIMS.

NWP asserts as a separate issue that the district court erred in finding for GPE on its mechanic's lien and unjust enrichment claims, contending that the open account defense bars GPE's lien claims, that GPE was paid by GPPC for the use of its rental equipment on the Spread 2 project, and that the district court erred in not allowing an offset to NWP for the amount that GPE owed to GPPC. Because we have held that GPE was entitled neither to a lien for the rental of its equipment nor to any recovery on the theory of unjust enrichment, we need not address the questions separately raised by NWP as possible defenses in regard to these claims.

### 8. WHETHER THE DISTRICT COURT ERRED IN REFUSING TO GIVE PRECLUSIVE EFFECT TO THE JURY'S VERDICT.

NWP asserts that the district court erred in making findings inconsistent with the jury's verdict as to the following claimants: Michetti, GPE, PTA, V–1 Oil, Atlas, Beard Oil, Hartford and Rocky Mountain. NWP contends that the bond statute claims and lien claims involved the same issues; therefore, the district court should have given preclusive effect to the jury's findings. Additionally, NWP asserts that the district court erred in awarding to GPE, Michetti and PTA more than the reasonable value of the unjust enrichment claims because the jury's factual findings placed a cap on damages for the unjust enrichment claims.

---

**8.** As to whether the district court erred in determining that the jury's verdict was only advisory, we affirm the district court. *See infra* Part IV(A)(8) of this opinion.

Again, because we have set aside the judgments on the Utah bond statute claims and all of the lien foreclosures except for the Michetti claim, we need not address these issues other than to state that we find no error with regard to the district court's refusal to give preclusive effect to the jury's findings concerning the Michetti lien. The jury's verdict was purely advisory with respect to the Michetti claim of lien.

## 9. WHETHER THE DISTRICT COURT ERRED IN REFUSING TO ALLOW AND CONSIDER NWP'S EQUITABLE DEFENSES.

NWP asserts that the district court erred in refusing to allow NWP to present equitable defenses by way of evidence that several of the claimants did not follow reasonable business practices that could have mitigated their damages. It appears from NWP's argument that these defenses relate to the lien claims, Utah bond claims and claims for unjust enrichment which we have held are not proper bases for relief. Accordingly, we need not reach the merits of this issue.

## 10. WHETHER THE DISTRICT COURT ERRED IN AWARDING ATTORNEY FEES, COSTS AND PREJUDGMENT INTEREST AGAINST NWP.

In Idaho, we adhere to the "American rule" which requires the parties to bear their own attorney fees absent statutory authorization or a contractual right. *Idaho Dep't of Law Enforcement v. Kluss*, 125 Idaho 682, 684, 873 P.2d 1336, 1338 (1994); *see also* I.R.C.P. 54(e)(1). Here, the district court awarded attorney fees to the prevailing parties on their lien claims pursuant to I.C. § 45–513, to the prevailing parties on their Utah bond claims pursuant to Utah Code § 14–2–2(3), and to the prevailing parties on their unjust enrichment claims pursuant to I.C. § 12–120(3). NWP argues that the district court erred in making these awards and in also awarding prejudgment interest to the claimants.

With the exception of Michetti's lien claim, we agree with NWP. The awards of fees, costs and prejudgment interest to each of the plaintiffs except Michetti must be vacated on the ground that none of the parties, except Michetti, was entitled to such awards under the statutes cited. It is well settled that in lien foreclosure actions, the recovery of attorney fees is incidental to the foreclosure. "Where the lien fails, no fee can be allowed." *Boone v. P & B Logging Co., Inc.*, 88 Idaho 111, 117, 397 P.2d 31, 34 (1964). Thus, with the exception of Michetti, none of the plaintiffs who claimed liens has been successful in this action. Furthermore, we have held that neither the Utah bond statute nor the theory of unjust enrichment provide relief to any of the plaintiffs. Thus there can be no award under Utah Code § 14–2–2(3), and, under I.C. § 12–120(3), one must be a prevailing party in order to receive an award of fees. The district court's awards to the plaintiffs under these statutes are not appropriate.

Accordingly, with the exception of Michetti, all awards of attorney fees, costs and prejudgment interest to the plaintiffs are vacated.

## B

### *SUBCONTRACTORS' CROSS-APPEAL ISSUES*

## 1. WHETHER THE DISTRICT COURT ERRED IN REFUSING TO ALLOW THE CLAIMS FOR PUNITIVE DAMAGES.

During various stages of the litigation in this case, the plaintiffs moved to add a claim for punitive damages. The district court denied the motions on the basis that the motions were untimely. On appeal, Racine Subcontractors, B.D. Holt, and K & O argue that the district court abused its discretion in not allowing the punitive damage claims. Because we hold that the subcontractors—except for Michetti—did not have viable underlying claims of lien, claims for recovery on the Utah bond statute or upon the theory of unjust enrichment, the district court's conclusion with respect to the timeliness of the motions to add punitive damage claims need not be addressed. As to Michettis' claim, we uphold the district court's conclusion. I.C. § 6–1604(2).

## 2. WHETHER THE DISTRICT COURT ERRED IN DENYING CRC–EVANS' AND COURTESY FORD'S CLAIMS FOR "REPAIR PARTS."

CRC–Evans and Courtesy Ford argue that the district court erred in denying their individual claims for repair parts. As with the other plaintiff-subcontractors, these claims were asserted as claims of liens, as claims under the Utah bond statute or as allegations under the theory of unjust enrichment.

For the reasons stated in Part IV(C)(1), we uphold the district court's decision that suppliers of repair parts are not entitled to claim liens under I.C. § 45–501. We have already determined the inapplicability of the Utah bond statute and the unavailability of unjust enrichment as a form of recovery to the plaintiffs in this case. Accordingly we affirm the district court's decision to deny CRC–Evans' and Courtesy Ford's claims of lien, Utah bond and unjust enrichment claims without further discussion.

## 3. WHETHER THE DISTRICT COURT ERRED IN DETERMINING THAT THE "OPEN ACCOUNT" DEFENSE BARRED VALLEY OFFICE SYSTEMS AND HARTFORD'S LIEN THEORY CLAIMS.

Valley Office Systems and Hartford Insurance assert that the district court erred in denying their claims because of NWP's open account defense. The district court held that the open account defense raised by NWP barred the claims of Valley Office and Hartford both for foreclosure of their claims of lien and for recovery under the Utah bond statute. Because we have held the Utah bond statute inapplicable to this case, we will discuss this issue only with respect to the claims of lien.

Valley Office rented equipment to GPPC. The district court held that Valley Office never relied, to any extent, on NWP or its land for the rental payment but relied exclusively on GPPC for payments. On appeal, Valley Office contends that the district court disregarded uncontroverted testimony that Valley Office first relied on GPPC for payment, but also relied on NWP for payment if GPPC did not pay. We need not decide whether the district court erred in applying the open account defense to Valley Office's claim of lien. The lien fails because Valley Office sought recovery, as a subcontractor, for equipment rented to the contractor, GPPC. *See* Part IV(A)(1)(a), *supra.*

Hartford submits that it is entitled to the full value of its lien claim because the open account defense does not apply to worker's compensation claims. We disagree.

In *Layrite Products Co. v. Lux,* 91 Idaho 110, 416 P.2d 501 (1966), this Court recognized the "open account" defense to be applicable: in situations when a person furnishing material relies exclusively on the general credit of the purchaser, and does not look to the land, structure or building as additional security for the materials sold on credit, then the supplier is not entitled to a lien. *Id.* at 115, 416 P.2d at 506. Idaho's lien statutes, specifically I.C. § 45–501, allow a lien for materials furnished to be used in a construction project, but do not allow a lien for furnishing material for "general or unknown purposes, or an ordinary sale in the usual course of trade, or on a general open account, or a sale without reference as to what shall be done with the materials sold." *Id.* at 113, 416 P.2d at 504. Accordingly, the Court summarized the open account doctrine by stating that,

> it is essential that the materials shall have been sold or furnished for the specific purpose of being used in the particular building on which the lien is claimed. Additionally, the materials must have been furnished on the credit of the building, and not merely on the general and personal credit of the owner, contractor or some other person. Where materials are furnished for use in a particular building, the fact that the materialman looks first or primarily to the contractor for payment and only subsequently to the building for security, would not itself defeat the lien.

*Id.* at 113–14, 416 P.2d at 504–05.

As to Hartford's claims, we conclude that sufficient evidence supports the district court's decision. We also affirm the district

court's decision to grant NWP's motion for judgment notwithstanding the verdict pursuant to I.R.C.P. 50(b). When determining whether a judgment notwithstanding the verdict should have been granted, we apply the same standard as the trial court, which is to determine whether no substantial competent evidence supports the jury verdict. *Quick v. Crane,* 111 Idaho at 764, 727 P.2d at 1192; *Brand S Corp. v. King,* 102 Idaho 731, 639 P.2d 429. Here, the district court concluded that Hartford's recovery on its claim of lien was barred by the open account defense because the evidence demonstrated that,

> [n]o substantial evidence was presented that Hartford, in providing worker's compensation insurance to the [Spread 2 project], relied to any extent on [NWP] or its land for payment. The evidence presented at trial overwhelmingly demonstrated that Hartford did not know that GPPC was performing work in Idaho until well after the commencement of that work. GPPC's policy with Hartford was not endorsed to include Idaho as a covered state on that policy. Hartford attributed none of GPPC's premium payments, made during the course of [NWP's] job, to GPPC's work in Idaho.

 Furthermore, Hartford's argument that the open account defense does not apply to claims under I.C. § 45-517, which is a specific statute for insurance claims, is without merit. We conclude that the open account defense applies to those claimants attempting to recover under Idaho's mechanic's lien statutes, even those parties who assert a mechanic's lien in the worker's compensation context. Therefore, we affirm the district court's decision that the open account defense barred Hartford's lien claim.

## 4. WHETHER B.D. HOLT'S CLAIM OF A MECHANIC'S LIEN WAS UNTIMELY RECORDED.

B.D. Holt asserts that the district court erred in dismissing its mechanic's lien claim. B.D. Holt bought a Caterpillar D8N tractor in 1991 and began leasing it to GPPC in July of 1992 to use on the Spread 2 project. However, due to GPPC's failure to make lease payments, the parties agreed in March of 1993 for GPPC to buy the equipment. B.D. Holt eventually recorded its lien on June 28, 1993. The district court denied B.D. Holt's lien claim pursuant to Idaho Code § 45-507 because it was recorded more than sixty days after B.D. Holt provided the tractor, as equipment, to be used on the Spread 2 project. B.D. Holt contends the district court was in error, because the lien was recorded within sixty days after GPPC stopped using the tractor when GPPC shut down the project in May, 1993.

We conclude that we need not decide whether the district court erred in rejecting B.D. Holt's claim of lien for untimeliness. The claim clearly arose either from a rental arrangement, or as a purchase agreement relating to equipment supplied to GPPC by B.D. Holt. B.D. Holt's status as a creditor of GPPC under either arrangement does not entitle it to the benefit of the mechanic's and materialman's lien laws for equipment that was not incorporated into, consumed or destroyed by the project. *See* Part IV(A)(1) *supra.*

### C

### *K & O'S SUMMARY JUDGMENT ISSUES*

### 1. WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO K & O'S CLAIMS.

K & O appeals from the district court's summary judgment dismissing K & O's claims. NWP moved for summary judgment to dismiss K & O's claims because Idaho's mechanic's lien statutes do not apply to suppliers of "repair parts." The district court agreed, granted summary judgment as to K & O's lien claims, and then subsequently dismissed, as a matter of law, K & O's unjust enrichment and Utah bond statute claims. Thus, most of the issues raised are the same as discussed above, however, the standard of review for all of K & O's claims are based on summary judgment.

Summary judgment must be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Friel v. Boise City Housing Authority,* 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). This Court's review of a district court's decision on a motion for summary judgment is the same as that required of the district court when originally ruling on the motion. *East Lizard Butte Water Corp. v. Howell,* 122 Idaho 679, 681, 837 P.2d 805, 807 (1992). As when the judgment is initially considered by the district court, this Court on review liberally construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor. *Friel,* 126 Idaho at 485, 887 P.2d at 30 (*citing Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994); *Harris v. Dep't of Health and Welfare,* 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992)). If a reasonable person could reach different conclusions or draw conflicting inferences from the evidence, a motion for summary judgment must be denied. *Stevenson,* 125 Idaho at 272, 869 P.2d at 1367. However, if the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review. *Id.*

### a. Repair Parts are Not Covered Under Idaho's Mechanic's Lien Statute.

 K & O asserts that the district court's holding that "the parts and repairs supplied by K & O contributed, primarily, to the repair of the equipment and not to the construction of Northwest's pipeline" was erroneous. K & O contends that the repair parts which allowed two link-belt machines to keep working on the Spread 2 project benefited NWP, and whether the repair parts were used and consumed on the NWP job is debatable.

As previously stated, Idaho Code § 45–501 applies to persons performing labor upon or furnishing materials to be used in the construction, alteration, or repair of a building or structure. Moreover, although this Court has approved a lien for "tools and appliances" in *Naylor, supra,* the claimant must still prove that the tools and appliances were used and consumed in the construction project. *Ninneman v. City of Lewiston, supra.*

Here, K & O supplied repair parts to maintain equipment, rented by GPPC, and used to construct NWP's Spread 2 project. The specific parts supplied by K & O included: hex screws and nuts, rod end, pawl rod and screw, back up rings, O-rings, washers, clutch shoes, lining kits, rivets, ball bearings, oil seals, bushing, dowel, piston ring, gaskets, shims, snap ring, roller chain, lock nut, spacers, a service manual, sprockets, bevel gear and a shaft. However, K & O's parts never became a part of the pipeline and were not used, consumed or destroyed in the course of the work.

Like leased equipment used on the Spread 2 project which would not be totally consumed, parts supplied to repair leased equipment would only enhance and add to the useful life of the leased equipment. *Accord Johnson v. Starret,* 127 Minn. 138, 149 N.W. 6, 8 (1914) (holding that parts and repairs for excavating machinery were not lienable because they were not consumed within the improvement, but merely became part of the contractor's personal property). The parts and repairs were not actually used and consumed in the construction of the Spread 2 project. Instead, the equipment's need for parts and repairs was based, at least in part, on the equipment's use prior to its service on the Spread 2 project. Additionally, the parts and repairs would certainly add to the equipment's future use. Thus, to allow K & O a lien for parts and repairs to rental equipment used on the Spread 2 project would essentially force NWP to pay for repairs and parts that would benefit the owner of the equipment well beyond the equipment's use on the Spread 2 project. Accordingly, we affirm the district court's decision to grant NWP's motion for summary judgment as to K & O's lien claims.

### b. Repair parts are not covered under Utah's private bond statute.

K & O asserts that the district court erred in concluding that repair parts are not covered by the Utah bond statute. Because we have concluded that the Utah bond statute provides no relief in this case, we affirm

the district court's decision to grant NWP's motion for summary judgment and deny K & O's bond claims.

**c. Repair parts are not covered under unjust enrichment law.**

K & O contends that genuine issues of material fact exist as to its unjust enrichment claim, which would preclude the district court from denying the claim by summary judgment. Because we conclude that the subcontractors cannot recover on the theory of unjust enrichment, we affirm the district court's decision granting summary judgment to NWP on this issue, albeit on other grounds. *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 179, 595 P.2d 709, 713 (1979).

**2. WHETHER THE DISTRICT COURT ERRED IN AWARDING ATTORNEY FEES AND COSTS TO NWP.**

K & O asserts that NWP failed to make a timely request for attorney fees and failed to make the petition in the proper form pursuant to I.R.C.P. 54. We conclude that the affidavit of Ronald E. Bush, setting forth NWP's costs and attorney fees covers all of the requirements of I.R.C.P. 54(d)(5).[9] Accordingly, we affirm the district court's decision to award attorney fees and costs to NWP on K & O's claims.

## V.

## CONCLUSION

For the above stated reasons, we set aside the judgment and decree regarding foreclosure of the mechanic's liens, the Utah bond claims and unjust enrichment claims, with the exception of the judgment permitting foreclosure of Michetti's claim of lien. We also vacate the awards of prejudgment interest, attorney fees and costs entered in favor of the plaintiffs, except for the awards of those items to Michetti on its claim of lien foreclosure. We affirm the summary judgment entered on K & O's causes of action and the award of attorney fees and costs to NWP against K & O.

9. Bush's affidavit was filed with the district court but was not included initially in the record on appeal. However, NWP filed a motion to aug-

No attorney fees or costs are awarded on appeal.

Chief Justice TROUT, and Justices Pro Tem JOHNSON, and MORFITT, CONCUR.

Justice SCHROEDER, CONCURS in part and DISSENTS in part.

I respectfully dissent from that portion of the opinion which determines that the district court erred in allowing claims based upon Utah's private bond statute. GPPC and NWP entered into the contract in Utah and specified that Utah law would apply. Each acted pursuant to the agreement. GPPC and NWP waived the bond requirement. Under these circumstances Utah's private bond statute should be applied, as determined by the district court.

ment the record which was subsequently granted on September 9, 1997.